No. 21,959.

ASA DILLON, *Appellant*, v. ED BRYANT, as Sheriff of Osborne County, *Appellee:*

SYLLABUS BY THE COURT.

CHATTEL MORTGAGE—*Not Given to Hinder and Delay Creditors.* Evidence examined, and held insufficient to defeat a chattel mortgage on the ground that it was made to hinder and delay creditors, notwithstanding the mortgagor was the son-in-law of the mortgagee.

Appeal from Osborne district court; RICHARD M. PICKLER, judge. Opinion filed March 8, 1919. Reversed.

*J. L. Travers,* of Osborne, for the appellant.

*J. K. Mitchell,* and *N. C. Else,* both of Osborne, for the appellee.

The opinion of the court was delivered by

PORTER, J.: Plaintiff sued to recover the value of part of a stock of merchandise which, while in his possession as mortgagee, defendant, as sheriff, levied upon and sold under an execution upon a judgment against the mortgagor. On the trial defendant prevailed, and plaintiff appeals.

The plaintiff is a retired railway engineer and for a number of years has been vice president of an organization of engineers and firemen, his duties taking him away from home most of the time. For several years his business affairs have been managed by his son-in-law, D. B. Harrison, who is cashier of a bank at Downs. A. P. Cotton, another son-in-law, was in the mercantile business in the same town. On the 31st day of May, 1917, Cotton was indebted to the plaintiff for $500 which the plaintiff had loaned him in May, 1916, and also owed the bank on two promissory notes which had been indorsed to the plaintiff. On May 27, 1917, Cotton was sued in a justice court on a small account which he owed to a wholesale company, and judgment was taken against him on May 29th. Mr. Dillon came home on the 21st of May, and Mr. Harrison called his attention to the fact that in order to protect him it was necessary to take a chattel mortgage on the stock of merchandise, and that he had procured one from Cotton with a note, due on

demand, for the indebtedness, which amounted to about $1,700. The plaintiff testified that he did not know where the instrument was prepared, but that it was at the bank when he first saw it in the possession of Mr. Harrison; that while he had not instructed anyone to prepare it, he had a copy of it placed on record and at once took the original to the store, where he made a demand of Cotton for the amount due, and when the demand was refused, he took possession of the stock. There is no conflict in the testimony showing a complete transfer of the possession of the stock to the plaintiff. On June 25th the sheriff levied an execution upon a portion of the stock, which was sold to satisfy the judgment in the justice court.

The defense to the present action was that the mortgage was fraudulent and made for the purpose of hindering and delaying creditors. In addition to the abstract of the evidence, we have examined carefully the entire transcript of the record, and we fail to find any evidence to sustain the charge of fraud. It was contended below and is argued here that the circumstances show that the mortgage was not taken in good faith. The principal circumstance upon which the defendant relies, however, is the relationship of the parties. In his brief it is repeatedly urged that plaintiff is the father-in-law of the judgment creditor, and also of the banker who assisted in the transaction, and at whose bank the plaintiff "transacted all his business." It is said that after the judgment was obtained "the appellant, knowing of this judgment and of his (Cotton's) indebtedness, together with his sons-in-law . . . *concluded that something would have to be done in order to defeat this and other claims,* and Mr. Harrison went to the train which came through the city of Downs in the morning and got Mr. Travers (the attorney for plaintiff) off the train and took·him to the bank, and afterwards and on the same day prepared the mortgage [under] which appellant claims to hold title to the goods. ˙And on the same day appellant went to the store of his son-in-law, after the said note and mortgage was signed, which was made due on demand, and demanded possession of said stock of goods and declared said note to be due and turned the possession of said stock over to his son-in-law, A. P. Cotton, to proceed with running and managing said stock." (Italics ours.)

There are references to portions of the transcript in the

foregoing excerpt, which have been examined, but which fail
to disclose any basis in the testimony for the statement that
the parties "concluded that something would have to be done
in order to defeat" creditors, unless the mere fact of the re-
lationship of the parties and that plaintiff, through his agent,
procured the execution of the mortgage to secure his own
claim, is evidence of an intent to defraud other creditors. The
only other circumstance relied upon is that Cotton wrote the
wholesale company as late as May 28th, and promised to see
its attorney about its claim, and made statements excusing his
failure to pay the debt and promises tending to defer action
upon the part of the creditor. It is not claimed that the plain-
tiff had any knowledge of this correspondence. To render the
transaction of the chattel mortgage fraudulent as to creditors
it was necessary not only to show fraudulent purpose on the
part of the debtor, but to offer some kind of evidence that the
plaintiff participated in such fraudulent intent. If defendant's
contentions are sound, it would be necessary merely to show
that the diligent creditor was a relative of the debtor and that
the effect of the transaction was to give to the former a prefer-
ence over general creditors. Such is not the law. The strongest
statement of defendant's position is thus set forth in his brief:

"The circumstances, it seems, show fraud conclusively and the intent
of fraud by Mr. Harrison stopping Mr. Travers on the train and having
the note and mortgage prepared, taking possession without any existing
indebtedness. And in order to show consideration for the mortgage
undertook to show that part of the indebtedness was due the State Bank
of Downs, of which the son-in-law of appellant was cashier and a part
for insurance due the Harrison Brothers."

The claim that there was no "existing indebtedness" when
the mortgage was executed, is contrary to the undisputed evi-
dence, which is that $500 of the money was paid to Cotton a
year before, and the notes which had been indorsed to the
plaintiff by the bank were executed, one of them in 1913 and
the other in 1914. A debtor may in good faith prefer one
creditor to another, and the diligent creditor is entitled to pro-
tection where he acts in good faith without intent to hinder
and defraud the other creditors. The fact that the mortgage
was executed without the express direction or knowledge of
the plaintiff, together with the relationship of the parties, is
not sufficient on which to base a presumption of fraud. The

business affairs of the plaintiff had been conducted and managed for years by Harrison, his son-in-law. It was not necessary that plaintiff should direct his agent to procure the mortgage. He ratified what the agent had done, immediately upon being informed of it. Mere relationship alone is not sufficient to show fraud, and in the absence of other circumstances which would justify the verdict and judgment, it follows that the judgment will be reversed and the cause remanded with directions to enter judgment for the plaintiff.

REHEARING DENIED—NEW TRIAL ORDERED UPON ONE
ISSUE.
(Filed April 23, 1919.)

In a petition for rehearing, attention is called to the fact that the trial court made no finding of the value of the merchandise which plaintiff sued to recover. The order directing judgment in plaintiff's favor will be modified, and a new trial ordered upon the one question of the value of the property taken under execution by the defendant.

Rehearing denied.