No. 23,532.

ALEXANDER A. PFEIFER, *Appellant,* v. J. B. BASGALL et al., *Appellees.*

SYLLABUS BY THE COURT.

1. REPLEVIN—*Live Stock and Wheat Crop—Conspiracy to Hinder and Delay Creditors.* The evidence examined, and held sufficient to sustain a verdict and judgment that a certain growing wheat crop and certain chattels covered by a mortgage were the property of defendants' judgment debtor, a brother of plaintiff, and that plaintiff's claims thereto were founded on a conspiracy of the brothers to hinder and delay the defendant creditors.

2. SAME—*No Error in Instructions.* In replevin, an instruction which declared that the burden was on the plaintiff to prove that he had a *bona fide* mortgage on chattels claimed by him was correct, the words *bona fide* as there used having the obvious meaning of genuine, authentic, or real, not spurious.

3. SAME—Read in connection with associated instructions, one in which the court summarized matters in evidence and explained the legal effect thereof was not justly subject to a criticism that the trial court assumed the truth of the evidence.

4. SAME—*Instruction Relative to Transactions Between Brothers.* Where creditors' rights are involved and a transaction between brothers tended to hinder and delay such creditors, an instruction which declared that such transaction may be shown to be fraudulent by *less proof* than in cases where the relationship of parties did not exist is faulty and may be erroneous unless it is supplemented by further instructions stating clearly that the minimum of proof of all the evidence must amount to a preponderance.

5. SAME—*Evidence—Failure to Include Property in Property Statement for Taxation.* Where judgment creditors sought to subject certain personal property to the payment of their claims against their judgment debtor, and an issue of fact arose between them and plaintiff as to whether plaintiff's claim to the property was genuine or spurious, it was of competent evidential value to show that plaintiff in his personal-tax statement to the assessor did not list the property in dispute as part of his personal assets.

Appeal from Ellis district court; ISAAC T. PURCELL, judge. Opinion filed December 9, 1922. Affirmed.

*J. P. Shutts, H. L. Pestana,* both of Hays, and *A. E. Crane,* of Topeka, for the appellant.

*E. A. Rea, E. C. Flood,* and *C. W. Reeder,* all of Hays, for the appellees.

The opinion of the court was delivered by

DAWSON, J.: The plaintiff, Alexander A. Pfeifer, brought this action in replevin to recover certain personal property which the sheriff had seized to satisfy certain judgments against Adam A. Pfeifer, a brother of plaintiff.

The action was in two counts—one for 10 cattle, 1 horse and 21¼ stacks of wheat, of which plaintiff claimed to be the owner; and another was for 6 cows and 1 mare, as to which plaintiff claimed to have a special ownership as mortgagee.

The judgment creditors of Adam A. Pfeifer were substituted for the sheriff as defendants, and they denied that plaintiff owned or had any interest in the property. They claimed that it was owned by Adam, and that there was a conspiracy on the part of Adam and Alexander whereby Adam's property was placed in the name of Alexander for the purpose of defrauding Adam's creditors.

All the property in dispute was found by the sheriff on premises occupied by Adam. The evidence developed the fact that plaintiff's claim of ownership in the live stock specified in count 1 was correct; and likewise tended to show that the mortgage on the other chattels was spurious. As to the wheat, the evidence tended to show that Adam made a pretended conveyance of his farm to Alexander, and a few months later Alexander reconveyed the farm to Adam, reserving the wheat crop to himself, and that this was done to hinder the creditors of Adam. .

Judgment was entered accordingly—for plaintiff on the cattle he claimed to own, and for defendants as to the wheat and also as to cattle covered by the chattel mortgage.

Noting plaintiff's contentions on appeal, it is first asserted that there was no evidence to impeach the *bona fides* of the chattel mortgage. This contention lacks merit. There was testimony tending to show that Alexander was making common cause with Adam to hinder and delay Adam's creditors, that the sale of Adam's land to Alexander was a "make-believe sale," and that Alexander was going to "hold" Adam's property and that "they [the Pfeifer brothers] made a mortgage on different things to make it show that way." As to the wheat, it was shown that after Adam conveyed his farm to Alexander, Adam continued to farm it as before, and when it was reconveyed to Adam, Alexander reserved the wheat crop, but the circumstances tended to show that this reservation was only part of the brothers' plan to keep it beyond the reach of Adam's creditors. On one occasion after Alexander had reconveyed the farm to Adam, the latter, in the presence of plaintiff, made a sale of the land to a stranger, reserving this wheat crop to himself, not to Alexander, and both Alexander and Adam insisted on payment for the farm in cash, not by check, lest some creditors would "jump on" the purchase

Pfeifer v. Basgall.

money. Another item of some evidential significance was that Alexander's alleged ownership of the wheat and his chattel-mortgage note covering Adam's personal property were not listed by plaintiff in his statement of personal property to the tax assessor. These and other circumstances resolved the issues into ordinary jury questions of fact; the cross-examination of Alexander thoroughly discredited him as a witness in his own behalf; and notwithstanding his plausible showing as to the purchase of the farm, his payments thereon, and his reservation of the wheat when he reconveyed to Adam, no appellate court would have the right to send this case back with directions to a trial court and jury *to believe* that testimony.

Error is also assigned on the instructions given and refused. In one given, the trial court said that the burden was on the plaintiff to prove that he had a *bona fide* mortgage on the chattels claimed by him. Plaintiff finds fault with the use of the adjective *"bona fide."* The criticism is overstrained. Read in connection with its associated text it meant no more than genuine, authentic, or real, not spurious. It was not disputed that plaintiff held a document executed by his brother purporting to be a chattel mortgage, but it was alleged by plaintiff that it was given for a valuable consideration, and this was the issue in dispute between the litigants. The instruction contained no error.

Fault is also found with the court's assumption of the truth of the evidence in one instruction (No. 10) and with its statement of the legal effect of such evidence. But when this instruction is read and considered with others given, it is free from serious fault. In another instruction, the jury were told that the burden of proving fraud was on the parties claiming it, and the fact that parties to a conveyance were related to each other by blood or marriage did not establish fraud in the transfer, but—

"The fact of the relationship may be properly considered in connection with other evidence to impeach the transaction. And where a conveyance or transfer between near relatives is claimed to be in fraud of creditors the transaction will be more closely scrutinized than if it were between strangers, and it may be shown to be fraudulent by *less proof* than in cases where the relationship did not exist."

Most of this is a fair statement of well-recognized principles of law. In *Whitson v. Griffis, sheriff,* 39 Kan. 211, 17 Pac. 801, it was said:

"Where the evidence shows that the mortgagor is a stepdaughter of the

mortgagee, and that they lived together as members of one family, it is proper for the court to instruct the jury that such facts may be taken into consideration by them in determining the good faith of the transaction." (Syl. ¶ 2.)

In *Burton and Shoemaker v. Boyd*, 7 Kan. 17, the widow attacked a deed which her deceased husband had executed to his brother, and this court declined to disturb a judgment resting, in part, on a verdict of a jury which had been instructed that "the relationship between [the brothers] is a circumstance which the jury may consider." (p. 20.)

In *Kennedy v. Powell*, 34 Kan. 22, 7 Pac. 606, where the creditor of a husband sought to enforce an attachment on property which the husband had conveyed to his wife, this court said:

"It is true the relationship existing between the parties to the transaction afforded great opportunity to commit fraud, and their action in making the transfer should be closely scrutinized in order to see that it was honest, and that the consideration was, paid out of her separate estate, and not made to withdraw the property from the reach of the creditors of her husband. But the conveyance cannot be overturned by the mere suspicion that may arise by reason of the transfer of the husband to the wife when he was in failing circumstances." (p. 25.)

In *Dillon v. Bryant*, 104 Kan. 380, 179 Pac. 318, it was said that mere relationship alone is not sufficient to show fraud, and other circumstances would have to be shown to sustain a verdict and judgment holding a chattel mortgage to be fraudulent. The rule is thus stated in 27 C. J. 641:

"The fact that the parties to a conveyance are related to each other either by blood or marriage does not of itself establish fraud in the transfer nor render it invalid, but the fact of relationship may properly be considered in connection with other evidence tending to impeach the transaction; and it is very generally stated that transactions between relatives will be closely scrutinized, because fraud is so easily practiced and concealed under such circumstances. In some states it is held that the transaction will be more closely scrutinized than if it was between strangers. So according to some decisions a transfer may be shown to be fraudulent by *less proof* than in cases where such relationship does not exist."

Apparently the instruction quoted was framed from this excerpt from Corpus Juris, but both the instruction and the quoted excerpt, standing alone, are somewhat faulty. A fraudulent transaction must in all cases be established by a preponderance of the evidence; the fact of relationship is merely an item of evidence, not sufficient in itself, to be weighed in with the other evidence to make up the requisite preponderance on which a verdict and judgment may be

Pfeifer v. Basgall.

founded. The "less proof" where parties are related must never be less than a preponderance. However, by various instructions, too long for repetition here, we think the jury could have been misled by the equivocal proposition involved in the criticised instruction. The other instructions given have been carefully reviewed, but they contain no errors and require no comment.

Touching the instructions requested and refused, these were largely drawn in accordance with plaintiff's main contention—that there was no evidence to support the defendant's claim that the reservation of the wheat and the giving of the chattel mortgage were for the purpose of defrauding Adam's creditors, and on the further erroneous assumption that the trial court and jury were bound to give full face value to plaintiff's evidence. Thus, one of the instructions requested and refused read:

"VII. You are instructed that under the law and evidence in this case, the chattel mortgage in question is valid and plaintiff is entitled to recover the fair and reasonable market price of the one Jersey cow, the red cow, the roan cow, the Holstein cow, and the three calves, taken by the defendants by their attachment as of the day they were taken, and interest at the rate of six per cent per annum from that day."

There seemed to be plenty of evidence that Alexander had once owned most of these mortgaged cattle and no reason to doubt that he sold them to Adam, but it did not follow that the chattel mortgage given thereon was *bona fide*. Other chattels, a horse and two cows, which were included in that mortgage, and which the sheriff did not seize, are still in the possession of Adam and the plaintiff has made no claim to them. There was also the evidence inherent in the fact that Alexander did not list this chattel-mortgage note for taxation. Was it error to attach some evidential significance to that fact? We think not. The law requires that every person of full age and sound mind shall list his personal property for taxation as of the first day of March in each year and verify the accuracy thereof. Plaintiff's statement to the assessor did not list the chattel-mortgage note, nor state his reserved ownership of the wheat crop, nor list the note for $3,300 which he held against Adam for the reconveyance of the farm. Plaintiff made no explanation of this except that he did not swear to his statement to the assessor. He did not claim that these omissions from his tax statement were an oversight; he made no explanation of their omission. Under all the circumstances the jury might justly conclude, with the aid of

the other evidence, that these items were omitted from plaintiff's tax list because in an honest statement of his personal assets it did not occur to him to observe the pretense that his claim to the growing wheat crop and to his brother's chattels covered by the mortgage were *bona fide* and that he should list them for taxation with the personal assets of which he was unquestionably the owner. We would not intimate that such omission from a tax statement would be sufficient in itself to defeat an otherwise honest claim, but the court can conceive of no reason why it should not be considered in evidence for what it may be worth under the circumstances.

A painstaking review of this entire case does not disclose any plain, palpable error which would justify a disturbance of the result reached in the trial court, and the judgment is therefore affirmed.