No. 25,117.

U. S. Goddard, *Appellee*, v. The Citizens First National Bank of Independence, *Appellant*.

SYLLABUS BY THE COURT.

1. Banks and Banking—*Action on Deposits—Plea of Payment by the Bank—Burden of Proof—Pleadings.* Plaintiff sued a bank and alleged that he had deposited $250 in the bank; that he had drawn on the deposit checks which had been honored for $25 only, and that the bank had refused to honor his draft for $225 drawn on the deposit. The bank answered admitting the receipt of the deposit, but alleged that plaintiff had withdrawn all the money deposited and this allegation was denied in the reply. *Held,* the only issue for trial was whether defendant had paid to plaintiff or to some one on his order the sum of $225, and further *held,* upon this issue the burden was upon defendant to show such payment.

2. Witness—*Collateral Matter Brought Out by Cross-examination—Witness May Not Be Impeached.* A party will not be permitted to impeach an opposing witness upon matters collateral to the issue, which were brought out by his cross-examination of such witness.

3. Trial—*No Error in Record.* Various complaints examined, and held to be without merit.

Appeal from Montgomery district court; Joseph W. Holdren, judge. Opinion filed March 8, 1924. Affirmed.

*W. N. Banks, O. L. O'Brien, Walter L. McVey,* and *Jay W. Scovel,* all of Independence, for the appellant.

*S. H. Piper,* and *W. R. Hobbs,* both of Independence, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This is an action for the amount of a deposit plaintiff claimed to have in the defendant bank and for damages for refusing to honor a draft drawn thereon. It was tried to the court and jury, judgment was rendered for plaintiff for the amount of the deposit claimed and defendant has appealed.

Plaintiff's petition alleged that on October 13, 1920, he deposited in the defendant bank $100 and was given credit on a pass book furnished him by the bank for that purpose and on October 25, 1920, deposited $150, for which he was duly credited. That thereafter he withdrew from the bank $25 and no more; that thereafter and on August 31, 1922, he drew a sight draft through the First National Bank of Thayer on defendant for $225, which defendant refused to pay.

The answer admitted the receipt of the deposits as alleged by plaintiff, but averred that on November 1, 1921, the plaintiff withdrew from the bank $50; on November 3, $50; on November 4, $40; on November 6, $10; on November 8, $35; on November 10, $5; on November 11, $10, and on November 23, $50, making a total of $250, and "That said Goddard has withdrawn from said bank all the money which he deposited therein." The reply denied the new matter in the answer.

Under the pleadings thus framed the only issue to be tried was whether the defendant had paid to plaintiff, or to some one on his order, the $225 in controversy. (7 C. J. 667; *Kleopfer v. Bank*, 65 Kan. 774, 70 Pac. 880.) In *Fee v. Bank*, 37 Utah 28, it was said:

"Where the complaint alleged that defendant bank received on deposit, on April 16, 1908, the sum of $1,077.62, which it agreed to repay on demand, but refused to do so, and the answer alleged that defendant received on the date alleged in the complaint the sum of $2,227.62, and paid to plaintiff on his check on a date thereafter the sum of $1,150, and on a subsequent date paid to him on his check the sum of $1,075, leaving a balance of $2.62, the only issue was whether defendant had paid to plaintiff or his order the sum of $1,075." (Syl. ¶ 1.)

Upon this issue the burden was upon the defendant. Having admitted the receipt of plaintiff's money, the bank could not be relieved of liability without showing that it paid the money to plaintiff or to some one else on his order, or in response to a valid order of a competent court in a proper proceeding. In 7 C. J. 669, it was said:

"Where a deposit is shown or conceded, the burden of proving the payment is on the bank." (*First Nat. Bank of Cushing v. Ketchum,* 68 Okla. 104; *Gonder v. Farmers Nat. Bank,* 259 Pa. 197; *Kuenster and another v. Woodhouse and another,* 101 Wis. 216; *Wiggins v. Stevens,* 53 N. Y. S. 90; *Patterson v. First Nat. Bank of Humboldt,* 73 Neb. 384.)

In this case the defendant assumed that burden. It had no checks or vouchers of plaintiff which had been drawn upon or charged against his account and no record that any such documents had ever been returned to him. The ledger account was in the name of W. S. Goddard, though the pass book issued to plaintiff, the identification card signed by him, and the deposit slip made out by the receiving teller, gave plaintiff's name U. S. Goddard correctly. The ledger account was received in evidence and it showed credits as claimed by plaintiff and admitted by defendant and showed charges against it corresponding to withdrawals claimed by defendant. Defendant then called the deputy assessor who took plaintiff's statement of personal property in 1921 and offered to show that plaintiff did not return any cash on hand or in the bank for taxation. The court sustained an objection to this offer of proof and the appellant complains of that ruling. It was not competent under the issue. Where the financial condition of a resident of the state is material to be considered, an exemplification of the tax record of the county of the party's residence, has been held admissible (22 C. J. 175; *Clark v. Empire Lumber Co.,* 87 Ga. 742), or his personal-property tax statement made by him to the assessor, not showing property claimed by him and required by law to be listed (22 C. J. 305; *Pfeifer v. Basgall,* 112 Kan. 269, 211 Pac. 134), though the statements therein are not necessarily controlling. (Id. p. 274.) But here the financial condition of the plaintiff was not the issue before the court. The defendant admitted that plaintiff's financial condition was such as to enable him to deposit $250 with it, by admitting the receipt of such deposit, and it plead payment as a defense to the action. So the only issue was, had the defendant paid plaintiff the money it admitted receiving from him? This offer of proof did not affirm or deny this question. (*Scott v. Smith,* 2 Kan. 438; *National Bank v. Quinton,* 57 Kan. 750, 48 Pac. 20.) What plaintiff said to the assessor about having money or not having money subject to taxation had such little, if any, bearing upon whether defendant had paid plaintiff, as it claimed, that its exclusion was of no consequence, at least when offered by defendant in chief. This evidence was proper

on the cross-examination of plaintiff for the purpose of affecting his credibility, and was so used. Hence, the ruling of the court in refusing its admission in chief could not in any event form the basis for reversal.

At the time he made the deposits in question and for several months thereafter the plaintiff lived at Elk City and was running a barber shop in a building owned by Mr. Quigg. Defendant produced Mr. Quigg as a witness on its case in chief and offered to prove that between October, 1920, and May, 1921, plaintiff was indebted to Quigg for rent and when asked for it plaintiff stated that he was hard up and had no money. The court sustained an objection to this offer. The court also sustained objections to defendant's offer to show that plaintiff owed a grocery bill and a meat bill at Elk City which he delayed. paying or declined to pay upon the excuse that he was hard up and had no money. Appellant complains of these rulings. In 1 Wigmore on Evidence, under the topic of Prospectant Evidence of a Human Act, and the subtopic, section 89, Possession or Lack of Money as affecting the Probability of a Loan, Payment or the like, says:

"A man destitute of property or credit cannot lend a large sum of money; his lack of the capacity to make such a loan is of some probative value to show that he did not make it. Such a lack of money or other resources is therefore relevant to show the improbability of the making of such a loan or payment."

And at section 224 it is said:

"To show his pecuniary condition as to this capacity, his conduct in borrowing or not paying thus becomes relevant. Nevertheless, a line is to be drawn for the mere failure (for example) to pay a specific debt may be open to so many other explanations than total lack. of the means . . . that it would have no appreciable probative value. There is room for much variety of circumstances in such evidence, and the discretion of the trial court should control."

But the issue in this case was not the ability of the plaintiff to make this deposit. The bank admitted he had made the deposit. Neither was the plaintiff's pecuniary condition the issue before the court. The clean-cut issue was, had the defendant paid plaintiff? If the plaintiff's pecuniary condition had any bearing at all upon the question of whether or not defendant had paid plaintiff it was so exceedingly remote that the court was justified in holding it immaterial. The trouble with admitting such evidence is well stated in *Woods v. Gummert,* 67 Pa. 136, where the court said:

Goddard v. National Bank.

"If the defendant is allowed to show that the plaintiff owes debts which he does not pay, the plaintiff may certainly rebut the evidence by showing that he has a good defense to them. Thus, innumerable collateral issues might be introduced." (p. 137.)

In the defense of the case the plaintiff took the witness stand, and upon cross-examination defendant interrogated plaintiff as to his indebtedness to his landlord and his grocer and butcher at Elk City. In each instance the plaintiff gave some explanation indicating there was a controversy over the matter, or some reason for delayed payment, but denied that he had said to any of these parties that he had no money. In rebuttal defendant called these same witnesses and offered to prove their version of the controversy between them and plaintiff, and specifically to impeach plaintiff on the question of whether or not he had said to them' that he had no money. The court sustained an objection to this rebuttal evidence and appellant complains of that ruling. Each presented a separate controversy between the plaintiff on the one hand and the respective parties on the other, which the court naturally could not try out in this case. They were collateral to the issue on trial and if the defendant desired to bring them out upon the cross-examination of the plaintiff it is bound by his answer. It was not a proper subject for impeachment, for the rule is well established that a witness cannot be impeached upon matters purely collateral to the issue, where they are brought out by the cross-examination of the party to the action who seeks to impeach him.

In 40 Cyc. 2769, it is said:

"It was laid down as a general rule that a witness, even though he is a party to the action, or the defendant in a criminal prosecution, cannot be contradicted for the purpose of impeachment as to collateral, irrelevant, or immaterial matters; and accordingly it is universally held that, where a party brings out such matters on cross-examination of his adversary's witness, he cannot contradict the witness' answers, or what amounts to practically the same thing, that it' is not permissible to cross-examine a witness as to collateral, irrelevant, or immaterial matters, merely in order to discredit him by contradicting his answers." (See cases there cited; also, *The State v. Sexton*, 91 Kan. 171, 136 Pac. 901; *The State v. Hays*, 113 Kan. 588, 215 Pac. 1109.)

Appellant complains of the instructions of the court, and particularly that they are not as full and complete as they should be. We have examined the instructions and think they cover the matter at issue. No request was made for additional instructions. Hence, there is no merit in this complaint.

Complaint is made of misconduct of the court. Perhaps courts, as well as counsel, should refrain from indulging in excessive jocularity in the presence of the jury, but we are unable to see how it is possible for the matter complained of to have affected the verdict. It therefore forms no basis for reversal. (*Bowers v. Mildren,* 107 Kan. 584, 592, 193 Pac. 318.)

Upon the motion for new trial affidavits were submitted from Mr. Quigg and others giving their side of their controversy with the plaintiff concerning the rent and the meat and grocery bills at Elk City. There is nothing in these affidavits to justify the court in granting a new trial.

There was some evidence tending to show some confusion in plaintiff's account at the bank, not only in its having been incorrectly entered on the books as W. S. Goddard, but a possibility that it might have been confused with a William or Isabel Goddard account. From the whole record it cannot be said that the evidence was insufficient to support the verdict. Indeed, that is not contended.

Finding no error in the record the judgment of the court below is affirmed.

BURCH, J., concurring in the affirmance.