No. 43,780

Jayhawk Equipment Co., a Corporation, *Appellee*, v. Wilma A. Mentzer, *Appellant*.

(394 P. 2d 37)

Opinion filed July 14, 1964.

*Hal C. Davis*, of Topeka, argued the cause and was on the briefs for the appellant.

*William R. Stewart*, of Topeka, argued the cause and was on the briefs for the appellee.

The opinion of the court was delivered by

Hatcher, C.: This is an appeal from a judgment rendered in an action in the nature of a judgment creditor's bill to impress an equitable lien upon real property which had been conveyed to a wife in a property settlement and made a part of the judgment in a divorce action.

The petition alleged in effect that the plaintiff was a judgment creditor of Delbert Mentzer, the divorced husband of the defendant, that a property settlement had been made in the divorce action which left Delbert Mentzer without assets to satisfy the judgment, and

"That said property settlement agreement was a conveyance which was made without consideration and for the purpose of hindering and defrauding this plaintiff as a creditor of Delbert Mentzer as the said Wilma A. Mentzer then knew. . . ."

The prayer was that the divorce decree approving the property settlement be declared null and void or that the judgment be declared a lien on the real property in controversy.

The answer denied that the property settlement was a scheme to defraud made without consideration.

The facts covering three separate actions may be summarized as they are detailed in *Jayhawk Equipment Co. v. Mentzer,* 191 Kan. 57, 379 P. 2d 342, where this court had this case before it on the question of *res judicata.*

On December 5, 1958, Delbert and Wilma Mentzer, then husband and wife, purchased as joint tenants a tract of land near 29th and California Streets, described as lot number 20 in Schellcrest Subdivision, an addition to the city of Topeka, Shawnee County, Kansas. A building was constructed on the real estate known as the Lariet Drive-In. Sometime during the spring of 1959, Delbert purchased certain restaurant equipment from the Jayhawk Equipment Company which was installed in the building. Part of the purchase price remained unpaid.

On September 19, 1960, the Jayhawk Equipment Company filed an action against Delbert and Wilma to recover the unpaid purchase price. Wilma was made a defendant in the action on the theory she had ratified and assumed Delbert's purchase agreement.

On November 28, 1960, Wilma filed an action for divorce. The petition alleged in part:

"Plaintiff further alleges that the parties are the owners of a small amount of household furniture, including one 1955 Buick automobile, real estate located near 29th and California Streets, Topeka, Kansas, and a small amount of other personal property."

The prayer was for an absolute divorce; that she be awarded the property belonging to the parties, and that she be awarded custody of the three minor children, ages seven, eight and twelve.

On November 30, 1960, Delbert and Wilma entered into a property settlement which provided in part:

"1. First Party shall have as her sole and separate property, free and clear of any and all claims of Second Party, the following real and personal property, to-wit:

"(a) One 1955 Buick Automobile.

"(b) All of the equity of the parties in and to the house and real estate known as 2245 Winterwood Lane, Topeka, Kansas, including all household furniture and personal effects therein.

"(c) All of the right, title and interest in and to the real estate and

building known as Lariet Drive-In at 29th and California Avenue, Topeka, Kansas.

"(d) All the right, and interest of the parties in and to a certain promissory note for $800.00 dated May 26, 1960 and from Mr. and Mrs. Raymond J. Fraser.

"2. It is further agreed that First Party shall have the sole custody, care and control of the three minor children of the parties hereto with reasonable rights of visitation granted to Second Party and Second Party agrees to pay for the support of said children the sum of $100.00 per month or such amount as may be determined hereafter by the Court.

"3. Second Party shall have as his sole and separate property all of his clothing and personal belongings."

On December 2, 1960, Delbert entered his voluntary appearance in the divorce action. On the same day an order of emergency was entered and a divorce granted to Wilma. The decree awarded Wilma the custody of the minor children, support and maintenance of the children in the sum of $100 a month and further provided:

"IT IS FURTHER BY THE COURT ORDERED that the property settlement made and entered into by and between the parties hereto be, and the same is hereby approved and made a part of this decree as though fully set forth herein and plaintiff is awarded all of the right, title and interest of the parties in and to the personal and real property set forth in said property settlement and defendant is barred from claiming any interest in and to said real and personal property and plaintiff is specifically awarded all of the right, title and interest in and to the building and real estate as described in said property settlement as the Lariet Drive-In at 29th and California Streets, Topeka, Kansas and described as follows:

"Lot 20 of Schell Crest Subdivision, an addition to the City of Topeka, Shawnee County, Kansas."

On April 27, 1961, the case of Jayhawk Equipment Company against Wilma and Delbert was tried. The trial court found:

"That plaintiff sold restaurant equipment and supplies to the defendant Delbert Mentzer d/b/a the Lariet Drive In in the total amount of $7,484.05. That there is still due and owing plaintiff from said sale the sum of $3,463.83 plus interest at the rate of six per cent (6%) per annum from June 1, 1959.

"That the defendant Mrs. Delbert Mentzer was not a partner of Delbert Mentzer in the operation of the Lariet Drive In Restaurant and was not a party to the contract of purchase of the equipment involved herein."

Judgment was entered in favor of Wilma, and against Delbert, in the sum of $3,860.22. Execution issued against Delbert was returned unsatisfied.

On May 3, 1961, the Jayhawk Equipment filed the action now under consideration.

Although not material to the issues now before us, it may be

noted that on May 9, 1961, Wilma sold the property in controversy for the sum of $16,000.00, a mortgage lien and costs of sale were paid and the balance in the sum of $4,887.06 was placed in escrow subject to the determination of this controversy.

Following the trial of the issues in the present controversy the trial court found:

"The Court, having heard the evidence presented by the parties, considered the documents presented into evidence, having studied the briefs submitted by the parties finds the allegations contained in plaintiff petition to be true. The court further found that this is an action in equity in the nature of a judgment creditors bill to impress an equitable lien upon the property commonly known as the Lariet Drive-In, located at 2414 East 29th Street in Topeka, Kansas described as:

"Lot 20 Schell Subdivision, an addition to the City of Topeka, Shawnee County, Kansas.

"The court further finds that the judgment plaintiff obtained on April 27, 1961 in the amount of Three thousand eight hundred and sixty and 22/100 dollars with interest at the rate of six percent (6%) per annum on Three thousand four hundred sixty-eight and 83/100 dollars until paid, should become an equitable lien on the above described property as of the date this action was filed being May 3, 1961."

Judgment was so entered and defendant has appealed.

The appellant first contends that the trial court erred in finding the allegations of the petition to be true, particularly that the property settlement was a scheme to defraud and without consideration, and further in granting judgment for appellee and adjudging an equitable lien on the real estate.

After a careful consideration of the record and all arguments advanced by the parties in support of their respective positions, we are constrained to agree with appellant's contention.

Appellee argues:

". . . It is the position of the appellee that the conveyance to Wilma A. Mentzer, in the divorce action, in view of the events involved and her knowledge of the debt, is in fact and in law a fraud to this appellee."

It must be conceded that Wilma had full knowledge of all the facts heretofore stated at the time the property was conveyed to her in the divorce action. It must also be conceded that she paid no money consideration therefor.

Appellee calls our attention to *Security Benefit Ass'n v. Swartz*, 146 Kan. 267, 70 P. 2d 16, which quotes from the first paragraph of the syllabus in *Hardware Co. v. Semke*, 105 Kan. 628, 185 Pac. 732, which reads:

"The transfer of property by a debtor to his wife without consideration, thereby placing all of his property subject to be taken by creditors beyond the reach of his creditors, amounted to a fraud in law, and the intent of the wife in accepting the transfer is immaterial."

The opinion in the Semke case states:

"Some reliance is placed upon the finding of the court that she had no actual intent to hinder, delay or defraud creditors when she accepted the conveyance. She knew her husband had been in several losing ventures, and knew that there were unpaid debts. She says that she secured the transfer of the property to her because of the poor financing of her husband; and fearing that all the property would be lost, they together concluded to put it beyond his control. This was the wife's acknowledged purpose. But, granting that there was no actual intent on her part to defraud his creditors, the placing of it beyond his control by a transfer which was without consideration, when there were creditors, amounted to a fraud in law." (p. 630.)

We adhere to the rule announced in the above cases, but suggest that the appellee fails to recognize the distinction between the status of a wife in a divorce action and that of a wife in the normal marriage relationship.

We need not consider the numerous cases cited by the parties which they attempt to use as a basis for argument by analogy. The question has been definitely determined in cases where similar facts were present.

A wife in a divorce action, if not an actual creditor of the husband, is at least such a quasi creditor that she can rely on her husband's obligation to support her and the minor children as consideration for a property settlement approved in a divorce decree. It is not contended that the appellee had any claim on Delbert's real estate, other than that of a general creditor prior to its judgment against Delbert which was obtained after the divorce decree.

Generally a creditor has no concern with a debtor's transfer of real property until the creditor's claim against the debtor is reduced to judgment. A debtor may in good faith prefer one creditor to another and the diligent creditor is entitled to protection if he is in good faith protecting his own claim as against others. (*Dillon v. Bryant,* 104 Kan. 380, 179 Pac. 318.)

The mere fact that an insolvent debtor pays one creditor in full, and in doing so absorbs all of his assets, is not of itself evidence of an intention to hinder, delay or defraud other creditors. (*Kingsbury v. Bank,* 71 Kan. 570, 81 Pac. 187; *Hasie v. Connor,* 53 Kan. 713, 37 Pac. 128; *Schram v. Taylor,* 51 Kan. 547, 33 Pac. 315.) This

is so even though the creditor is the wife (*Berkley v. Tootle*, 46 Kan. 335, 26 Pac. 730) or the children of the debtor (*Peoples State Bank v. Dierking*, 143 Kan. 617, 56 P. 2d 85).

It is a general rule that a divorce decree approving an agreement transferring a husband's real estate to his wife vests her with an equitable interest superior to the claim of an existing creditor of the husband who subsequently obtains a judgment. The rule is stated in 27B C. J. S., Divorce, § 302, p. 420, as follows:

"Property which has been decreed to a wife as the final distribution of the husband's estate cannot be subjected to the lien of subsequent judgment creditors of the husband, and personalty decreed to the wife is not subject to attachment in a subsequent action for the husband's debts. . . ."

In *Graham v. Pepple*, 129 Kan. 735, 284 Pac. 394, this court had a similar situation before it and held:

"Where an action for divorce and alimony is properly and timely instituted and prosecuted by a wife against her husband, and in her petition she specifically claims the right to have a definitely described tract of land within the jurisdiction belonging to the husband set apart to her as permanent alimony, a third party cannot acquire an interest in that property by the subsequent institution of an action against the husband for the recovery of money and by attaching that particular tract of land to the satisfaction of any judgment he may obtain against the husband; and although judgment in the attaching creditor's case is rendered some time before the rendition of the judgment in the wife's action awarding her the property as permanent alimony, she is entitled to injunctive relief to protect her rights in the property against its sale to satisfy the judgment of the attaching creditor." (Syl.)

In the opinion it is stated on page 737:

". . . Be that as it may, our own cases are conclusively to the effect that in an action for divorce and alimony, properly and timely instituted and prosecuted, where the plaintiff in her petition sets out specifically the property which she seeks to have subjected to her rights, third parties are thereby constructively notified, and the doctrine of *lis pendens* will protect her claim thereto against a third party's claim founded on some legal process invoked subsequently. (*Wilkinson v. Elliott*, 43 Kan. 590, 23 Pac. 614; *Kremer v. Schutz*, 82 Kan. 175, 107 Pac. 780.) Such is the prevailing rule. (Ann. Cas. 1913D, 950.)"

It will be noted that in the case before us for determination the divorce action was not pending as the decree had been entered before the creditor got judgment against the husband.

It will be understood, however, that a different rule might well be applied if the property conveyed to the wife in the divorce action was unreasonable in amount or in excess of her reasonable requirements under the circumstances. The wife would then be

in no better position than a preferred creditor who has received property greatly in excess of the amount of the debt.

In the opinion in the Graham case the court also disposed of the suggestion that the rule would open another easy way to cheat creditors, stating at page 738:

"Counsel for appellant suggest the possibility that if the law is as declared by the trial court and now reiterated by us—

" 'Then another safe and easy way to cheat and defraud creditors has been disclosed. If husband and wife are financially embarrassed and desire to do so, the wife can simply file a suit for divorce, claiming everything in sight, and trust to some kind-hearted and sympathetic judge to grant her prayer.'

"Such an argument could only be availing if addressed to the legislature, and there it would probably be met with the suggestion that unless the wife whose grievances constrain her to seek judicial relief has her rights protected by the rule of *lis pendens* that another safe and easy way to cheat and defraud her would be disclosed to the delinquent husband. If his wife should sue him for alimony and lay claim to have specific property adjudged to her for its satisfaction, an accommodating friend of the husband could readily defeat that claim by a subsequent attachment in a suit against the husband to which only a simulated defense need be made, or no defense whatever."

The court did not have to wait long for a case to come before it covering a situation similar to the one suggested in the above quotation. In *Rumsey v. Rumsey*, 150 Kan. 49, 90 P. 2d 1093, an attempt was made to defeat a wife's action for alimony by the husband's conveyance of an interest in land for a nominal consideration. The interest had passed into the hands of a third party who claimed to be an innocent purchaser. It was held:

"Where a wife files a petition asking for alimony, in which she describes certain real estate belonging to her husband, and prays that it be awarded to her as permanent alimony, the doctrine of *lis pendens* applies, and anyone who purchases such property during the pendency of the action will be bound by the judgment subsequently rendered therein." (Syl. ¶ 1.)

We are forced to conclude that the property settlement conveying the husband's real estate to the wife and made a part of the divorce decree did not constitute a fraud on the husband's creditors under the facts disclosed by the record, and the property could not be reached by a subsequent judgment creditor.

The conclusion reached renders unnecessary the consideration of the appellant's contention that the trial court erred in impressing the lien on appellant's one-half interest in the real estate.

The judgment is reversed.

APPROVED BY THE COURT.