EUNICE G. TYRELL, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Tyrell
Docket No. 13012-90
United States Tax Court
T.C. Memo 1992-717; 1992 Tax Ct. Memo LEXIS 758; 64 T.C.M. (CCH) 1543; December 17, 1992, Filed Decision will be entered for petitioner. For Petitioner: Myrlen L. Bell. For Respondent: David G. Hendricks and Michael J. O'Brien. JACOBS
JACOBS
MEMORANDUM FINDINGS OF FACT AND OPINION JACOBS, Judge: Respondent determined transferee liability under section 6901 (as a result of transfers of interests in realty on June 8, 1981) against Eunice G. Tyrell (petitioner) in the amount of $ 23,000 for unpaid 1979 and 1980 income taxes, and additions to tax, due from petitioner's former spouse, Scott M. Tyrell (Mr. Tyrell). By stipulation, the parties agreed that the market value (on the date of transfer) of the realty, interests in which were transferred from Mr. Tyrell to petitioner, was $ 43,000. The parties further agreed that petitioner had a preexisting one-half interest in the realty transferred. Accordingly, respondent now concedes that petitioner's transferee liability is limited to $ 21,500. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. FINDINGS OF FACT Some of the facts have been stipulated and *759 are so found. Petitioner resided in Tribune, Kansas, at the time the petition in this case was filed. Petitioner and Mr. Tyrell were married in 1945. A son was born of the marriage in 1953. As a result of marital difficulties in 1969, Mr. Tyrell moved into an apartment in the basement of their home. The basement apartment had a kitchen, bedroom, living area, and bathroom. At some point in the mid-1970s, Mr. Tyrell became involved in the tax protester movement. Concerned that the banking system would collapse, Mr. Tyrell began to purchase silver coins and ingots. He did not discuss the value of his silver holdings with petitioner. From 1945 through 1978, petitioner and Mr. Tyrell filed joint income tax returns. In 1978, Mr. Tyrell informed petitioner that he no longer would file income tax returns. Because of Mr. Tyrell's refusal to file a return of individual income tax for 1979, petitioner filed her own return claiming the status of "married, filing separately". She did the same for 1980. On May 27, 1981, shortly after filing her individual return for 1980, petitioner sought a divorce from Mr. Tyrell. Also on May 27, 1981, petitioner and Mr. Tyrell entered into a property *760 settlement agreement. Pursuant to the property settlement agreement, petitioner received: The family home, which was a converted schoolhouse, located in Tribune, Kansas; two vacant lots in Cape Coral, Florida; two Chevrolet pick-up trucks, a 1972 model and a 1977 model; a 1976 Ford pick-up truck; and a 1967 travel trailer. In addition, the property settlement agreement provided that petitioner and Mr. Tyrell each was entitled to retain the personal property in their possession. Respondent and petitioner now agree that the aggregate market value of the real property transferred to petitioner under the property settlement agreement was $ 21,500: $ 20,000 representing Mr. Tyrell's one-half interest in the family home and $ 1,500 representing Mr. Tyrell's one-half interest in the two lots located in Florida. Petitioner and Mr. Tyrell were divorced on May 28, 1981. The property settlement agreement was incorporated into a decree of divorce. Petitioner, who worked as a nurse's aide in a local hospital, was awarded no alimony even though Mr. Tyrell's annual income was much greater than hers. Mr. Tyrell's interests in the realty awarded to petitioner under the property settlement agreement *761 were transferred to her on June 8, 1981. Although all intimacy between petitioner and Mr. Tyrell ceased with their divorce, Mr. Tyrell continued to reside in the basement apartment within petitioner's home. Petitioner continued to act as Mr. Tyrell's bookkeeper (by paying his bills and depositing checks for him) in order to keep track of a debt owed to her and Mr. Tyrell by their son. Also, she continued to maintain Blue Cross/Blue Shield coverage for Mr. Tyrell, but he reimbursed her for his share of the premiums. In late 1982, from September through December, respondent made several attempts to contact petitioner regarding Mr. Tyrell's income tax liability. The only response respondent received from petitioner was an undated letter (postmarked October 7, 1982) received by respondent on October 8, 1992. In that letter, petitioner stated that she did not wish to waive her Fourth and Fifth Amendment rights and declined an offer to be audited. The letter was written at the direction of Mr. Tyrell. Mr. Tyrell was convicted of failing to file income tax returns for 1979, 1980, and 1981. As a result of his conviction, he was incarcerated on January 31, 1986, and served approximately *762 3 months of a 1-year sentence. Respondent subsequently issued a statutory notice of transferee liability to petitioner. OPINION Pursuant to sec. 6901(a)(1)(A), respondent may collect from a transferee of assets the unpaid income tax liability of the transferor. Phillips v. Commissioner, 283 U.S. 589, 592 and n. 3 (1931) (discussing Revenue Act of 1926, ch. 27, sec. 280, 44 Stat. 9, 61, which was the predecessor to sec. 6901); Gumm v. Commissioner, 93 T.C. 475, 479 (1989), affd. without published opinion 933 F.2d 1014 (9th Cir. 1991). Section 6901 provides, in part: (a) METHOD OF COLLECTION. -- The amounts of the following liabilities shall * * * be assessed, paid, and collected in the same manner and subject to the same provisions and limitations as in the case of the taxes with respect to which the liabilities were incurred: (1) INCOME, ESTATE, AND GIFT TAXES. -- (A) TRANSFEREES. -- The liability, at law or in equity, of a transferee of property- (i) of a taxpayer in the case of a tax imposed by subtitle A (relating to income taxes),
* * * (b) LIABILITY. -- Any liability *763 referred to in subsection (a) may be either as to the amount of tax shown on a return or as to any deficiency or underpayment of tax.
Section 6901(h) provides that a transferee may be a donee, heir, legatee, devisee, or distributee. Courts have defined a transferee as a person who takes or receives property of another "without full, fair, and adequate consideration" to the prejudice of creditors. United States v. Floersch, 276 F.2d 714, 717 (10th Cir. 1960). Respondent has the burden of proving all of the elements necessary to establish petitioner's liability as a transferee. Sec. 6902(a); Rule 142(d). If respondent carries this burden of proof, the transferee (here, petitioner) is liable for the transferor's (here, Mr. Tyrell's) taxes due for the year of the transfer and for prior years, as well as any additions to tax and interest, to the extent the amount of such does not exceed the value of the assets transferred. Estate of Glass v. Commissioner, 55 T.C. 543, 575 (1970), affd. 453 F.2d 1375 (5th Cir. 1972). The determination as to the transferee's liability for the transferor's *764 obligation, and the extent of that liability, depends upon State law. Commissioner v. Stern, 357 U.S. 39, 45 (1958); Adams v. Commissioner, 70 T.C. 373, 389 (1978). The transfers occurred in Kansas; and except for an interest in two lots located in Florida having relatively insignificant value, Kansas was the situs of all property transferred to petitioner from Mr. Tyrell. Hence, Kansas law governs.[1]Id. at 390. In Kansas, every conveyance of land made with the intent to defraud creditors is void and of no effect.[2]Credit Union of America v. Myers, 234 Kan. 773, 676 P.2d 99 (1984) *765 (citing Kan. Stat. Ann. sec. 33-102). Kansas' fraudulent conveyance law, Kan. Stat. Ann. sec. 33-102, has not been amended since its enactment in 1868. Gorham State Bank v. Sellens, 244 Kan. 688, 690, 772 P.2d 793, 795 (1989). The statute provides: TRANSFERS TO DELAY OR DEFRAUD CREDITORS OR PURCHASERS. Every gift, grant or conveyance of lands, tenements, hereditaments, rents, goods or chattels, and every bond, judgment or execution, made or obtained with intent to hinder, delay or defraud creditors of their just and lawful debts or damages, or to defraud or to deceive the person or persons who shall purchase such lands, tenements, hereditaments, rents, goods or chattels, shall be deemed utterly void and of no effect.
Kan. Stat. Ann. sec. 33-102 (1991). *766 In order to establish that the transfers in this case were void and of no effect under Kan. Stat. Ann. sec. 33-102, respondent must establish the following: First, that the transferor had the intent to hinder, delay, or defraud his creditors. And second, that the transferee participated in the fraudulent scheme or had knowledge of the facts and circumstances that would impart knowledge of the fraud to her. Credit Union of America v. Myers, 234 Kan. at 778, 676 P.2d at 104 (1984). Under Kansas law, the determination of whether a conveyance is fraudulent is a question of fact. Mohr v. State Bank of Stanley, 244 Kan. 555, 568, 770 P.2d 466, 477 (1989). The party alleging a fraudulent conveyance must prove the allegation by clear and convincing evidence. Gorham State Bank v. Sellens, 244 Kan. at 692, 772 P.2d at 795. Because direct evidence of fraud is seldom available, Koch Engineering Company v. Faulconer, 239 Kan. 101, 106, 716 P.2d 180, 185 (1986), and fraud must often be proven by circumstantial *767 evidence, Credit Union of America v. Myers, 234 Kan. 773, 778, 676 P.2d 99, 104 (1984), the Supreme Court of Kansas has recognized the following six indicia of fraud or "badges of fraud": (1) A relationship between the transferor and transferee; (2) the transferee's knowledge of litigation against the transferor; (3) the insolvency of the transferor; (4) a belief on the transferee's part that the contract or property conveyed was the transferor's last asset subject to Kansas execution; (5) inadequacy of consideration; and (6) consummation of the transaction contrary to normal business procedures. Id. at 778, 676 P.2d at 104 (citing Polk v. Polk, 210 Kan. 107, 110, 499 P.2d 1142, 1145 (1972)). The first badge of fraud is the existence of a relationship between the transferor and transferee. Here, at the time the property settlement agreement was executed, petitioner was still married to Mr. Tyrell. Although family relation is not conclusive on the issue of fraud, Credit Union of America v. Myers, 234 Kan. at 778, 676 P.2d at 104, *768 transfers of property from one family member to another family member are subject to closer scrutiny. Arkansas City v. Anderson, 243 Kan. 627, 634, 762 P.2d 183, 189 (1988). Here, the relationship badge between the transferor and transferee has been established. The second badge of fraud is the transferee's knowledge of litigation against the transferor. Here, petitioner was aware that Mr. Tyrell's nonpayment of taxes could result in the foreclosure of property in which she had an ownership interest. However, there is nothing in the record to indicate that litigation was pending against Mr. Tyrell at such time. In fact, the record indicates that the IRS did not contact petitioner regarding Mr. Tyrell until more than a year after the divorce and property settlement agreement became final. Respondent thus failed to prove that petitioner/transferee had knowledge of litigation against Mr. Tyrell/transferor. The third badge of fraud is the insolvency of the transferor. Petitioner disputes respondent's allegation that Mr. Tyrell was rendered insolvent as a result of the transfers. Under Kansas law, a debtor is considered insolvent *769 for purposes of fraudulent conveyances when his property is insufficient to pay all debts or where the value of his remaining property is so near the amount of his debts that the conveyance tends to impair the creditors' power to force collection by judicial process. Arkansas City v. Anderson, supra at 636, 762 P.2d at 190 (quoting Security Benefit Association v. Swartz, 141 Kan. 227, 232, 40 P.2d 433, 436 (1935)). Under the terms of the property settlement agreement, Mr. Tyrell transferred his ownership interest in all jointly held assets to petitioner. As a result, Mr. Tyrell was apparently left with insufficient property to pay his creditors, including respondent. Petitioner asserted that Mr. Tyrell possessed a silver hoard worth over $ 30,000; said assertion, however, is not supported by the record. Petitioner, her daughter-in-law, and her brother testified that each had seen Mr. Tyrell in possession of silver coins or silver ingots at different times. To support her claim that Mr. Tyrell had a silver hoard, petitioner offered several handwritten receipts for purchases of silver. *770 While these receipts were found among Mr. Tyrell's personal belongings, none identified Mr. Tyrell as the purchaser of the items listed thereon. Even though we find petitioner's testimony and the testimony of her daughter-in-law and brother to be credible, their testimony and this documentary evidence is not sufficient to rebut respondent's affirmative showing that the transfers rendered Mr. Tyrell insolvent. Thus, in our opinion, respondent has established the badge of fraud involving insolvency. The fourth badge of fraud is a belief on the transferee's part that the contract or property conveyed was the transferor's last asset subject to a Kansas execution. Here, we are satisfied that petitioner/transferee did not believe that Mr. Tyrell was conveying his last asset subject to Kansas execution. Petitioner believed Mr. Tyrell's annual income to be between $ 30,000 and $ 40,000. In addition, she believed that he had over $ 30,000 in a silver hoard. The testimonial and documentary evidence concerning that silver hoard, while insufficient to rebut respondent's showing of the third badge of fraud involving insolvency, was sufficient to establish petitioner's belief of the existence *771 of a silver hoard. Respondent failed to establish the fourth badge of fraud. The fifth badge of fraud is inadequacy of consideration. Here, pursuant to the property settlement agreement, Mr. Tyrell conveyed to petitioner his one-half ownership interest in realty worth $ 43,000; thus, the total value of Mr. Tyrell's realty rights conveyed to petitioner was $ 21,500. Respondent offers two arguments to establish the fifth badge of fraud. Respondent first argues that inadequacy of consideration should not be considered in this case because petitioner acted in bad faith and was chargeable with constructive notice of the alleged fraud perpetrated by Mr. Tyrell. Respondent next argues that, even if petitioner did not act in bad faith or was not chargeable with constructive notice of the fraud, there was an absence of consideration for the transfers from Mr. Tyrell to petitioner. We find neither of respondent's arguments persuasive. First, we reject respondent's claim that petitioner acted in bad faith or with constructive knowledge of fraud. Petitioner testified that she requested a divorce from Mr. Tyrell, in part because of his refusal to pay his taxes. Further, she denied any *772 involvement in a scheme to obtain a divorce in order to defraud the Government. In this regard, petitioner was asked the following question by the Court: Is the Government's allegation in fact true that this was a scheme between you and Mr. Tyrell to defraud the [Government] out of taxes?
Her response: Absolutely not. It was never even talked about. We find petitioner to be a truthful witness. We next reject respondent's alternative argument that the transfers lacked adequate consideration. The Supreme Court of Kansas has stated: A wife in a divorce action, if not an actual creditor of the husband, is at least such a quasi creditor that she can rely on her husband's obligation to support her and the minor children as consideration for a property settlement approved in a divorce decree.
Jayhawk Equipment Co. v. Mentzer, 193 Kan. 505, 509, 394 P.2d 37, 41 (1964). The facts of Jayhawk Equipment are similar to the facts of the instant case. Id. In Jayhawk Equipment, debtor-husband owed a third-party creditor a sum of money. The third-party creditor obtained a judgment against debtor-husband but was *773 unsuccessful in executing the judgment against him. The third-party creditor then attempted to execute a lien on property the wife had received as part of a property settlement incorporated into a decree of divorce. The third-party creditor obtained judgment after both the filing of the divorce petition and the final decree of divorce was issued. The Supreme Court of Kansas held that the judgment creditor could not levy on property received by the wife under the prior decree because the transfers, which were supported by adequate consideration, were not fraudulent conveyances. Id.
The transfers in this case were made pursuant to a property settlement agreement which was incorporated into a decree of divorce. We find Mr. Tyrell's obligation to support petitioner adequate consideration for the property settlement agreement. See Mayors v. Commissioner, 785 F.2d 757 (9th Cir. 1986), revg. T.C. Memo. 1984-401 (under California law, no transferee liability where house was received in partial settlement of claims arising from nonmarital live-together arrangement; property was received for fair consideration). Since the *774 transfers made pursuant to the property settlement agreement were supported by adequate consideration, respondent failed to establish the fifth badge of fraud. The sixth badge of fraud is the consummation of the transaction contrary to normal business procedures. The transfers at issue were made pursuant to a divorce property settlement. There is nothing in the record of this case to indicate that the transfers were consummated in a manner contrary to normal business procedures. Petitioner testified that a number of events, including Mr. Tyrell's insistence that petitioner join the tax protester movement, made her feel as if she was close to having a nervous breakdown. Petitioner further explained that she sought an emergency divorce, an expedited form of divorce under Kansas law, because she felt she had to get out of her marriage to Mr. Tyrell as soon as possible. Again, we find her testimony credible. Respondent, therefore, did not establish the sixth and final badge of fraud. Respondent failed to establish that the transfer of assets to petitioner was made with the intent to hinder, delay, or defraud Mr. Tyrell's creditors. Further, respondent failed to show that petitioner *775 participated in a fraudulent scheme or had knowledge of the facts and circumstances of a fraudulent scheme. Thus, we find the transfer of assets was not a fraudulent conveyance under Kansas law, and thus hold that respondent failed to establish, as required by section 6902, petitioner's liability as a transferee under section 6901. To reflect the foregoing, Decision will be entered for petitioner. Footnotes
1. To the extent Florida law applies to the transfers of Mr. Tyrell's one-half interests in the Florida lots, it is in accord with Kansas statutes and case law. Fla. Stat. Ann. sec. 726.01 (West 1991); Schad v. Commissioner, 87 T.C. 609, 614 (1986), affd. without published opinion 827 F.2d 774↩ (8th Cir. 1987).
2. Courts have construed the term "void and of no effect" to mean that such a conveyance is void only as to the equitable title and is merely voidable as to the legal title. Gorham State Bank v. Sellens, 244 Kan. 688, 692, 772 P.2d 793, 795↩ (1989).