No. 61,167

GENE MOHR and TRI-COUNTY FARM EQUIPMENT CO., *Appellee*, v. STATE BANK OF STANLEY, KANSAS, *Appellant*, v. JAMES B. LOYD, *Appellee*.

No. 61,647

KANSAS BANKERS SURETY CO., *Appellant*, v. TRI-COUNTY FARM EQUIPMENT CO., EXECUTIVE FINANCIAL SERVICES, INC., and SLC OF NORTH AMERICA, INC., *Appellees*.

(770 P.2d 466)

Opinion filed March 7, 1989.

*Alan V. Johnson*, of Sloan, Listrom, Eisenbarth, Sloan & Glassman, of Topeka, argued the cause, and *Martha A. Peterson*, of the same firm, was with him on the briefs for appellants.

*Kenneth C. Jones*, of Watson, Ess, Marshall & Enggas, of Olathe, argued the cause, and *John J. Gardner*, of the same firm, was with him on the briefs for appellees Gene R. Mohr and Tri-County Farm Equipment Co.

*Gordon N. Myerson*, of Gordon N. Myerson, P.C., of Kansas City, Missouri, argued the cause, and *Matthew J. Stretz*, of the same firm, and *Dennis Clyde*, of Gates & Clyde, Chartered, of Overland Park, were with him on the brief for appellee SLC of North America, Inc.

*Michael E. Whitsitt*, of Overland Park, argued the cause and was on the brief for appellee Executive Financial Services, Inc.

The opinion of the court was delivered by

Six, J.: This appeal involves two consolidated cases arising from the same factual situation. The legal concepts interwoven into the factual fabric are intervention, setoff, attorney liens, the standard of review for involuntary dismissals, fraudulent conveyance, reliance-promissory estoppel, and debtor-creditor settlements.

State Bank of Stanley (Stanley Bank) appeals from a denial of its motion to set off a judgment against it in favor of Tri-County Farm Equipment Co. (Tri-County) (case No. 61,167). Kansas Bankers Surety Company (KBS), an appellant in both cases,

appeals from a denial of a motion to intervene in case No. 61,167, and from a dismissal of another suit against Tri-County, Executive Financial Services, Inc., (EFS) and SLC of North America, Inc., (SLC) creditors of Tri-County, based on a claim of fraudulent conveyance (case No. 61,647). The trial judge in No. 61,167 was James Bouska. The trial judge in No. 61,647 was Janette Sheldon.

We find no error and affirm.

The questions for review are:

### Judge Bouska's Case, No. 61,167

(1) Whether KBS should have the right to intervene in the action to determine the distribution of proceeds.

(2) Whether the trial court erred in denying Stanley Bank's motion for setoff and in refusing to conduct an evidentiary hearing on the issue of the Bank's right to setoff.

(3) Whether the trial court erred in determining that Tri-County's attorney's lien was valid.

### Judge Sheldon's Case, No. 61,647

(4) What is the proper standard of review for an involuntary dismissal pursuant to K.S.A. 60-241(b)?

(5) Whether the trial court erred: (a) in finding that KBS did not establish a prima facie case of fraudulent conveyance; (b) in finding that the settlement agreement between Tri-County, EFS, and SLC was in accord with normal business procedures; (c) in determining that the agreement between Tri-County's attorney and John Deere's attorney was illusory; (d) in finding that John Deere's attorney unreasonably relied on the statements of Tri-County's attorney; and (e) in ruling that EFS and SLC, creditors of Tri-County, are entitled to have their claims satisfied.

### FACTS

The facts underlying these multi-party consolidated appeals are complicated. This appeal is the third review we have extended to controversies arising from the difficulties encountered by Tri-County, a John Deere farm implement dealership. *Mohr v. State Bank of Stanley*, 241 Kan. 42, 734 P.2d 1071 (1987) (*Mohr I*), provides a background of the events leading up to the present litigation. See also *Executive Financial Services, Inc. v. Loyd*, 238 Kan. 663, 715 P.2d 376 (1986).

Gene Mohr and James Loyd were co-owners of Tri-County.

During 1982, Loyd embezzled money from Tri-County by endorsing checks made out to the company and depositing the proceeds into his personal account. He also assigned various fraudulent notes to John Deere and diverted installment payments due John Deere. The checks bearing forged endorsements were all paid by or through the First National Bank of Olathe (FNB) and the Stanley Bank.

Tri-County sued FNB, seeking recovery on the forged checks, on September 8, 1983. A similar action was filed against Stanley Bank on October 11, 1983. A $450,000 settlement was ultimately reached in the action against FNB. The action against the Stanley Bank proceeded to trial, resulting in a judgment in favor of Tri-County. The Stanley Bank case was affirmed, in part, by this court in *Mohr I,* 241 Kan. 42.

In May 1983, John Deere had reached an agreement with Mohr and Tri-County. John Deere foreclosed upon certain Tri-County inventory in which John Deere had a security interest and Mohr (who had personally guaranteed the debts of Tri-County) conveyed certain real estate to John Deere. In addition, Tri-County and Mohr agreed to assist John Deere in collecting accounts receivable and to cooperate in the investigation or prosecution of Loyd.

Following the May 1983 agreement, counsel for John Deere and counsel for Tri-County and Mohr corresponded concerning claims against FNB and Stanley Bank arising out of the forged checks. John Deere's counsel claimed that John Deere had a "proceeds" interest in some of the forged checks and sought a percentage of Tri-County's recovery from the banks. Tri-County sought to keep John Deere from intervening in the state court actions against FNB and Stanley Bank. Although the negotiations between the attorneys continued for over two years, no written settlement was ever reached and John Deere never intervened in the state court claims against the banks. John Deere did, however, bring a separate action against Tri-County and the two banks in United States District Court on October 31, 1984.

John Deere's lead attorney testified in Judge Sheldon's case, No. 61,647, that the only reason the federal action was filed was to toll the statute of limitations. On December 3, 1984, counsel for John Deere informed the attorney for FNB that John Deere

would oppose being joined as a party in Tri-County's state action against FNB and indicated that John Deere would give credit to FNB on any judgment received in federal court to the extent that such judgment represented double recovery. On April 1, 1985, Tri-County's counsel wrote to John Deere's attorney, "I will contact you prior to executing any settlement agreement with the First National Bank of Olathe."

On July 3, 1985, FNB, through its surety, KBS, filed a petition for involuntary bankruptcy against Tri-County in the United States Bankruptcy Court for the District of Kansas. KBS and Fidelity and Deposit of Maryland (F&D) first became involved in their capacity as surety companies for the Stanley Bank and FNB. John Deere, EFS, and SLC petitioned as creditors in the bankruptcy action. EFS claimed a judgment against Tri-County in the amount of $104,367.33. *Executive Financial Services, Inc. v. Loyd*, 238 Kan. 663. SLC claimed that Tri-County was indebted to it in excess of $800,000 pursuant to various lease agreements. John Deere claimed that Tri-County was indebted to it in excess of $1,000,000.

On July 11, 1985, FNB and Tri-County reached a settlement in their state court litigation. At the time of the settlement, John Deere's lead attorney was out of town on vacation. Tri-County's attorney called the office of John Deere's attorney and left a message for him. He also called and left a message for a partner of John Deere's lead attorney. The partner received the message on July 11, 1985, that Tri-County was about to settle with FNB. When he returned to the office and learned of the message, the partner was unable to reach Tri-County's attorney.

Under the terms of the settlement between Tri-County and FNB, FNB was to pay Tri-County, Mohr, and their attorneys $450,000. The amount of $156,551.70 was to be held in escrow pending a final determination of a garnishment order served on FNB by EFS on December 19, 1984. The money remained in escrow until October 1986, when the Court of Appeals affirmed the district court's judgment quashing the garnishment order. *Executive Financial Services, Inc. v. Loyd*, case No. 58,966, (unpublished opinion, filed October 16, 1986).

John Deere did not attempt to assert any claim against the escrow account; however, it did file a motion for a temporary restraining order with the bankruptcy court. An order restraining

Mohr from disposing of the proceeds of the settlement with FNB was filed on August 2, 1985, in the bankruptcy court. The order expired after ten days and John Deere took no action to renew it. John Deere contended that Tri-County's attorney had breached an agreement with John Deere when Tri-County and Mohr settled with FNB without first consulting with John Deere's attorney. John Deere, however, did not take steps to intervene in Tri-County's remaining action against the Stanley Bank, which was set for trial on August 12, 1985.

During the fall of 1985, Tri-County, John Deere, FNB, Stanley Bank, KBS, and F&D held settlement negotiations. At one point, the prospect of settlement was so favorable that the bankruptcy hearing was continued and drafts of settlement agreements were circulated. No settlement was ever reached, however, and on March 7, 1986, John Deere entered into a settlement agreement with the two banks, was paid $340,000, and assigned its claims against Tri-County to KBS.

Shortly after the settlement between John Deere and KBS, Tri-County settled with EFS and SLC. The agreement provided that the two companies would share equally in a portion of the money held in escrow from the earlier settlement with FNB and that the proceeds from the action against Stanley Bank would be assigned to EFS and SLC. This agreement, which is the basis for KBS's fraudulent conveyance claim (case No. 61,647), was filed in the bankruptcy court and made subject to that court's approval. The bankruptcy action was subsequently dismissed in June 1986.

KBS brought suit against Tri-County, Mohr, SLC, and EFS (case no. 61,647). KBS asserted that the settlement between Tri-County and EFS and SLC was a fraudulent conveyance and claimed a pro rata share of the settlement as assignee of John Deere. KBS originally asserted several theories of recovery, but the district court ordered that the issue of fraudulent conveyance be bifurcated for a separate trial and that the other claims and issues be held in abeyance until a determination of the fraudulent conveyance claim. The record does not indicate the disposition of KBS' other claims. At the close of KBS' evidence, Tri-County and Mohr moved for dismissal pursuant to K.S.A. 60-241(b). Judge Sheldon granted the motion to dismiss, finding that KBS had failed to prove a prima facie case of fraudulent conveyance.

During the time that the litigation between KBS and Tri-County was pending, this court handed down *Mohr I.* 241 Kan. 42. Tri-County filed a motion for distribution of the proceeds of the judgment and a determination of attorney fees. The attorneys for Tri-County had previously filed a notice of attorney's lien with the court, pursuant to K.S.A. 7-108 and no objection had been raised.

Stanley Bank moved for a right of setoff in the distribution of the proceeds of the *Mohr I* judgment, based on two alternative theories: the common-law right of set off and a "circle of indemnity" theory (case No. 61,167). KBS also filed, in 61,167, a motion to intervene in the distribution, claiming: (1) KBS, as assignee of John Deere, had a superior interest in the judgment proceeds as against any other party; and (2) Tri-County's attorneys had fraudulently breached an agreement with John Deere (KBS' assignor) and acted in bad faith.

Judge Bouska ordered that Tri-County's attorneys be awarded fees and reimbursement costs. The remainder of the judgment was distributed to Tri-County. Tri-County paid the money over to SLC and EFS pursuant to their earlier agreement. Judge Bouska denied KBS' motion to intervene and Stanley Bank's motion for setoff.

Judge Bouska's Case, No. 61,167

### 1. INTERVENTION

When Tri-County moved the district court for a distribution of the proceeds of the judgment and a determination of attorney fees, KBS moved to intervene pursuant to K.S.A. 60-224. K.S.A. 60-224(a) states:

"Upon timely application anyone shall be permitted to intervene in an action: (1) When a statute confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter substantially impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties."

Our cases interpreting 60-224 were summarized in *McDaniel v. Jones,* 235 Kan. 93, 106-07, 679 P.2d 682 (1984).

Since intervention is a matter of judicial discretion, KBS must show that the trial court abused its discretion in denying the motion. *Lone Star Industries, Inc. v. Secretary, Kansas Dept. of*

*Transp.*, 234 Kan. 121, 131, 671 P.2d 511 (1983). The scope of review is whether the judicial action is arbitrary, fanciful, or unreasonable or whether no reasonable person would take the view adopted by the trial court. 234 Kan. at 131. "If any reasonable person would agree, appellate courts will not disturb the trial court's decision." *Hoffman v. Haug*, 242 Kan. 867, 873, 752 P.2d 124 (1988).

In denying KBS' motion to intervene, Judge Bouska said:

"The Court finds that the proposed intervenor, KBS, is the surety company for defendant SBS and is required to indemnify it for that portion of the judgment which has been affirmed by the Supreme Court on appeal, and, consequently, has known of this action since its inception. The Court further finds that KBS's assignor, the John Deere Company, has known of this action since 1985, that the John Deere Company has filed a separate cause of action against SBS, among others, in the United States District Court for the District of Kansas, viz: *John Deere Company v. James B. Loyd, et al.*, Case No. 84-2281-0 and, that all claims by John Deere against the State Bank of Stanley were settled and dismissed with prejudice on March 11, 1986. The Court further finds that KBS has an action pending against Tri-County in another division of this Court, viz: *Kansas Bankers Surety Company v. Tri-County Farm Equipment Company*, Case Number 86 C 8628, that KBS has applied for a prejudgment garnishment and that that motion was denied by Judge Sheldon on July 14, 1987. This Court further finds that SBS's [*sic*] Motion to Intervene is not timely, that it has no interest in the subject matter of this action and that it is not so situated that the disposition of this matter will as a practical matter impair or impede its ability to protect its interest."

## Timeliness

In order to intervene in an action, all three factors listed in *McDaniel v. Jones*, 235 Kan. 93, must be met. Here, Judge Bouska found that KBS' motion to intervene was not timely. The determination that the motion was untimely was not an abuse of discretion. The United States Supreme Court has held that timeliness is to be determined from all the circumstances and is a matter of judicial discretion. *NAACP v. New York*, 413 U.S. 345, 366, 37 L. Ed. 2d 648, 93 S. Ct. 2591 (1973). KBS has been the insurer for Stanley Bank throughout this litigation, which commenced in 1983. In addition, John Deere assigned its claims against Tri-County to KBS in March 1986, over a year before KBS sought intervention in this action.

KBS states that it did not intervene in this action after John Deere assigned its claims to KBS because: (1) The involuntary bankruptcy proceeding was pending from July 3, 1985, to June 1, 1986, and KBS was prevented from intervening by the automatic stay provision, 11 U.S.C. § 362 (1982); and (2) the *Mohr I* appeal

was pending from October 1985 to July 1987, and the appeal did not concern issues that affected KBS' interest in the litigation. We are not persuaded. FNB, through its surety, KBS, initiated the bankruptcy proceedings and neither KBS nor John Deere obtained relief from the automatic stay provisions. KBS still did not seek to intervene until over a year after the bankruptcy action was dismissed.

On June 6, 1986, during the pendency of the *Mohr I* appeal, Tri-County filed a motion to substitute KBS for Stanley Bank as the appellant, alleging that KBS was the real party in interest. At the time KBS settled with John Deere, it had also settled with Stanley Bank. A copy of this settlement was attached to Tri-County's motion to substitute. Tri-County argued that the effect of this settlement was that KBS would indemnify Stanley Bank in the action and KBS would continue to provide a defense for Stanley Bank in the action.

Stanley Bank opposed the motion to substitute KBS as the real party in interest on the theory that an insurance company cannot be made an original party to a lawsuit against its insured. Tri-County's motion, however, was not based on an insurance theory but on a contract theory due to the settlement agreement. KBS appears to have had an opportunity to become a party to *Mohr I* long before KBS moved to intervene, and it vigorously opposed being included in the litigation at that time.

KBS contends that its position as the assignee to John Deere's claims against Tri-County gives it the right to intervene in this action. John Deere knew this action was pending as early as 1983 and did not intervene at that time. KBS claims that John Deere's failure to timely intervene should be excused because John Deere was persuaded not to intervene by the misrepresentations made to John Deere's counsel by Tri-County's counsel. Even after the settlement between Tri-County and FNB, which KBS contends was in bad faith, John Deere did not seek to intervene in the action against Stanley Bank. At the time KBS moved to intervene, the misrepresentation by counsel-bad faith issue was pending in separate litigation (case No. 61,647, which is the subject of the second part of this appeal.)

Our analysis indicates that KBS' motion to intervene was untimely and that the trial court did not abuse its discretion in denying the motion to intervene.

## KBS' Interest in the Litigation

KBS claims that some of the forged checks, upon which Tri-County's judgment against Stanley Bank is based, represented proceeds from John Deere's security interest in Tri-County's inventory and accounts receivable or proceeds from installment payments on notes owned by John Deere. KBS, however, has never presented any evidence which would establish that the judgment was "proceeds" from collateral in which John Deere had a security interest. A search of the UCC filings for Tri-County with the Secretary of State of Kansas on August 7, 1987, showed no security interest in favor of John Deere.

All claims John Deere had against Stanley Bank were settled when KBS settled with John Deere and the federal court action was dismissed. The interest of KBS arises out of John Deere's claims against Tri-County, based on the alleged bad faith of Tri-County and its attorneys. KBS, as surety for Stanley Bank, has provided Stanley Bank's defense throughout the litigation. There is no indication, however, that Stanley Bank ever asserted that the funds at issue were due to John Deere, not Tri-County. KBS and Stanley Bank have known of John Deere's claims since at least October of 1984. It would be prejudicial to the other parties to allow KBS to intervene and assert its interest at this late date.

KBS claims that it was prejudiced by the denial of its motion for intervention because Tri-County's judgment against Stanley Bank represents Tri-County's last assets subject to Kansas jurisdiction and KBS will be unable to recover from Tri-County. KBS knew this action was pending and that it might have an interest in the proceeds of any judgment awarded, yet failed to move to intervene until after the case had been tried and appealed to this court.

In *United States v. South Bend Community School Corp.*, 710 F.2d 394, 396 (7th Cir. 1983), the Seventh Circuit Court of Appeals held that a motion to intervene *after* entry of a consent decree was untimely. In the present case, although the district court still had jurisdiction over the proceeds of the judgment, the case had already been decided on its merits.

Judge Bouska's finding that KBS' motion to intervene was untimely was not an abuse of discretion.

## 2. SETOFF

Stanley Bank claimed a right of setoff based on KBS' "liquidated contract claim against Tri-County in excess of $2,500,000." Stanley Bank claims a right of setoff based on claims of KBS, not Stanley Bank. KBS is not a party to this action. Both KBS and its assignor, John Deere, contested previous efforts to bring them into this litigation.

In *Alexander v. Clarkson,* 100 Kan. 294, 299, 164 Pac. 294 (1917), which is cited by Stanley Bank, this court found that there could be no setoff because the two judgments involved were not mutual. Stanley Bank relies on *Herman v. Miller,* 17 Kan. 328, 332 (1876). In *Miller* this court said, "[A] party must be the absolute and beneficial owner of a judgment before he can have it off-set a judgment against him."

KBS is obligated to reimburse Stanley Bank for the judgment in favor of Tri-County; however, KBS is not a party to this action and its claims against Tri-County arise from its settlement with John Deere, not its role as surety for Stanley Bank. The judgment against Stanley Bank and the claims against Tri-County are not mutual for purposes of setoff. In addition, KBS' claims against Tri-County were not matured at the time of Stanley Bank's motion for setoff. No "proceeds" right had been determined and there was no judgment on the fraudulent conveyance action. Judge Sheldon in case No. 61,647 ultimately found that the fraudulent conveyance claim had no merit. It was not an abuse of discretion for Judge Bouska in case No. 61,167 to deny Stanley Bank's motion for setoff.

Stanley Bank also contends that it is entitled to setoff under the "circle of indemnity" theory advanced in *Dennis v. Southeastern Kansas Gas Co.,* 227 Kan. 872, 610 P.2d 627 (1980).

In the case at bar, Tri-County is entitled to recover from Stanley Bank and Stanley Bank is entitled to recover from KBS, but there has been no determination that KBS is entitled to recover from Tri-County. A major distinction between this case and the *Dennis* case is that, in *Dennis,* all three participants in the "circle" were parties to the action and all the duties to indemnify arose out of the same factual situation. Here, KBS was not a party to the action and the claims that KBS alleges, although arising out of related matters, do not arise out of the same factual situation.

At the hearing on the various motions, the attorney for KBS and Stanley Bank requested an evidentiary hearing on the factual issues raised by the motions. *Carson v. Chevron Chemical Co.*, 6 Kan. App. 2d 776, 635 P.2d 1248 (1981), is cited in support of the argument that an evidentiary hearing should have been held on the motion for setoff. In *Carson*, the trial court conducted a post-judgment hearing to determine the priorities in the proceeds of the judgment. The Court of Appeals did not address the issue of the appropriateness of an evidentiary hearing.

In *Carson*, it was clear that *mutual judgments* were involved; therefore, the trial court found it necessary to conduct an evidentiary hearing.

In the case at bar, it is clear, without any evidentiary hearing, that mutuality does not exist between Stanley Bank and Tri-County. Stanley Bank is not attempting to offset its own claim, but the claim of KBS, which is not a party to this action. In addition, even if there were mutuality, there is no judgment upon which to base a setoff. An evidentiary hearing was not necessary to make such a determination.

## 3. TRI-COUNTY'S ATTORNEY'S LIEN

At the hearing on the motions for distribution, setoff, and intervention, KBS/Stanley Bank's attorney stated that there should be an evidentiary hearing, but never specifically requested a hearing on the validity of the attorney's lien. Stanley Bank never challenged the *validity* of the attorney's lien, but has asserted that the attorney's lien should be set aside due to the fraudulent breach of trust by Tri-County's attorneys.

KBS contends that a fraudulent breach of trust will defeat an attorney's lien and that the trial court should have conducted an evidentiary hearing to determine if such a breach occurred. It has not been alleged that Tri-County's attorneys did not properly file their lien in accordance with K.S.A. 7-108.

Tri-County does not challenge the lien of its attorneys, nor does it allege any misconduct by its attorneys. The misconduct asserted by KBS arose out of negotiations between John Deere's attorneys and Tri-County's attorneys and the claim of fraudulent breach of trust was subsequently assigned to KBS by John Deere. It is unrelated to the Tri-County/Stanley Bank suit and does not arise out of KBS' role as surety to Stanley Bank. Since

KBS was not allowed to intervene in this action, this issue has been raised on appeal by Stanley Bank.

Stanley Bank argues that K.S.A. 7-106 implicitly provides that an attorney's lien may be voided where the attorney has fraudulently breached a trust. K.S.A. 7-106 provides:

"An attorney or counselor who is guilty of deceit or collusion, or consents thereto, with intent to deceive a court or judge, or a party to an action or proceeding, or brings suit or commences proceedings without authority therefor, is liable to be disbarred, and shall forfeit to the injured party treble damages, to be recovered in a civil action."

A reading of the statue shows that the argument is without merit. The statute clearly contemplates the bringing of a separate lawsuit for such misconduct. The statute is not to be utilized as a method of defeating attorneys' liens. In addition, the statute clearly states that the deception must be aimed at a party to an action or proceeding. It has not been alleged that Tri-County's attorneys intended to deceive Stanley Bank, but that they intended to deceive John Deere/KBS, neither of which are parties to this action.

Stanley Bank has no basis on which to challenge the attorney's lien. It was not error for the trial court to determine the validity and amount of the attorney's lien without an evidentiary hearing.

## Judge Sheldon's Case, No. 61,647

### 4. THE STANDARD OF REVIEW

After the close of KBS' evidence on the fraudulent conveyance claim, in the case before Judge Sheldon, defendants jointly moved for an involuntary dismissal pursuant to K.S.A. 60-241(b). The trial court dismissed the case and made findings of fact, as required by K.S.A. 60-252(a), and conclusions of law. K.S.A. 60-252(a) provides, "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses."

A finding that the plaintiff did not sustain the burden of proof is a negative finding. *Box v. Cessna Aircraft Co.*, 236 Kan. 237, 246, 689 P.2d 871 (1984). In a fraudulent conveyance action, fraud is never presumed and must be proved by clear and convincing evidence. The party asserting the fraudulent conveyance has the burden of proving it. *Koch Engineering Co. v. Faulconer*, 239 Kan. 101, 106, 716 P.2d 180 (1986).

"The effect of a negative finding by a trial court is that the party upon whom the

burden of proof is cast did not sustain the requisite burden. Absent arbitrary disregard of undisputed evidence or some extrinsic consideration such as bias, passion or prejudice the finding of the trial judge cannot be disturbed. An appellate court cannot nullify a trial judge's disbelief of evidence nor can it determine the persuasiveness of evidence which the trial judge may have believed." *Highland Lumber Co., Inc. v. Knudson,* 219 Kan. 366, Syl. ¶ 5, 548 P.2d 719 (1976).

## 5. JUDGE SHELDON'S RULINGS

Our analysis continues with the examination of whether the trial court erred (a) in finding that KBS did not establish a prima facie case of fraudulent conveyance; (b) in finding that the settlement agreement between Tri-County and EFS and SLC was in accord with normal business procedure; (c) in determining that the agreement between Tri-County's attorney and John Deere's attorney was illusory; (d) in finding that John Deere's attorney unreasonably relied on Tri-County's attorney's statements; (e) in ruling that defendants EFS and SLC are entitled to have their claims satisfied.

### 5a. Fraudulent Conveyance

The determination of whether a conveyance is fraudulent is a question of fact. *Credit Union of Amer. v. Myers,* 234 Kan. 773, Syl. ¶ 5, 676 P.2d 99 (1984). This court, therefore, can only reverse the trial court's finding that KBS did not establish a prima facie case of fraudulent conveyance if the trial court's finding was clearly erroneous.

"In general, the elements which comprise a fraudulent conveyance are first, an intent on the part of the grantor to hinder, delay or defraud his creditors and second, the participation of the grantee in such fraudulent scheme or such knowledge on the latter's part of facts and circumstances as would impart knowledge of the fraud to him. This court has recognized six badges or indicia of fraud. The badges or indicia of fraud are: (1) a relationship between the grantor and grantee; (2) the grantee's knowledge of litigation against the grantor; (3) insolvency of the grantor; (4) a belief on the grantee's part that the contract was the grantor's last asset subject to a Kansas execution; (5) inadequacy of consideration; and (6) consummation of the transaction contrary to normal business procedures. [Citation omitted.]" *Credit Union of Amer. v. Myers,* 234 Kan. at 778.

The trial court held that KBS had failed to prove that Tri-County had the requisite *intent* to hinder, delay, or defraud John Deere/KBS and that there was no enforceable agreement between Tri-County's attorney and John Deere's attorney. The court found that three of the above-stated "badges of fraud"

existed: (1) Tri-County was insolvent; (2) EFS and SLC knew that there was litigation pending against Tri-County; and (3) it was reasonable to assume that EFS and SLC knew that the judgment was Tri-County's last asset subject to Kansas execution. Judge Sheldon found that KBS had failed to show: (1) a lack of consideration for the conveyance; (2) that the conveyance was contrary to normal business procedures; and (3) that there was a relationship between the grantor and grantee.

In weighing the above findings, the trial court found that no inference of fraudulent intent had been established. Judge Sheldon said:

"Further, there has been no evidence that Tri-County intended to hinder or delay KBS. It seems illogical for plaintiff to exert [sic] that position, as they were actively involved in settlement negotiations themselves, with Tri-County, right up to the time of the conveyance. Plaintiff has little right to complain. The judgment remained in an escrow account for fifteen months. Also, it was plaintiff's filing of an involuntary bankruptcy proceeding that put a stay on the execution of the judgment."

Judge Sheldon extended more weight to the three "badges" or indicia which were not proven by KBS. KBS argues that the three indicia that were found to exist were sufficient to create an inference of fraud.

In *Koch Engineering Co. v. Faulconer*, 239 Kan. at 107, this court recognized that some badges of fraud are weaker than others and that a finding of badges of fraud may warrant an inference of fraud, if *they are unexplained* in the evidence. "While these badges might give rise to an inference of fraud, this inference would be subject to explanation and contradiction by other circumstances and by oral testimony." *Schreiber Milling Co. v. Nutrena Mills, Inc.*, 149 Kan. 276, 282, 87 P.2d 577 (1939). "Existence of a circumstance which might be considered a badge of fraud, or existence of several such circumstances, is not necessarily incompatible with good faith in fact." *Johnson v. Collins*, 142 Kan. 52, 54, 45 P.2d 575 (1935).

In *Polk v. Polk*, 210 Kan. 107, 499 P.2d 1142 (1972), the appellant contended that the trial court erred in finding no fraudulent conveyance occurred, because the record indicated that all six badges of fraud were present. This court upheld the trial court's ruling, stating that the issue of a fraudulent conveyance is a question of fact and the trial court had the opportunity to evaluate the testimony and weigh the evidence.

Judge Sheldon heard the testimony of the two John Deere attorneys, Jerry Calloway (division credit manager for John Deere), and of Gene Mohr, one of the defendants. Judge Sheldon also examined numerous exhibits, including correspondence between the John Deere and Tri-County attorneys and evidence documenting the settlement negotiations among all the parties, arising out of the bankruptcy proceeding.

"Generally, when ruling on a motion for involuntary dismissal under K.S.A. 1981 Supp. 60-241(b) at the close of plaintiff's case, a trial judge sitting without a jury has the power to weigh and evaluate the evidence in the same manner as if he were adjudicating the case on the merits and making findings of fact at the conclusion of the entire case. [Citation omitted.] On appellate review of an order of involuntary dismissal entered as per the situation above, the findings of fact made by the trial court will be upheld if there is substantial evidence to support them, and the evidence will be viewed in the light most favorable to the party prevailing at trial. [Citations omitted.]" *Baker v. R.D. Andersen Constr. Co.*, 7 Kan. App. 2d 568, 579, 644 P.2d 1354 (1982).

There is substantial evidence to support the court's finding that KBS did not establish a prima facie case of fraud. John Deere, the assignor of KBS, had itself been trying to negotiate a settlement with Tri-County in which SLC and EFS were not involved. John Deere ultimately settled with the banks instead and received more money than it would have in a settlement with Tri-County. Tri-County did not assign the settlement money and judgment proceeds to EFS and SLC until after John Deere had settled with KBS and the banks. The settlement between EFS and SLC and Tri-County was filed with the bankruptcy court and made subject to the court's approval.

It is apparent that Judge Sheldon carefully weighed all the evidence prior to ordering the dismissal. Her findings were supported by the evidence and we cannot say that the findings were clearly erroneous.

### 5b. The Settlement Agreement Between Tri-County and EFS and SLC

Judge Sheldon concluded that the settlement between Tri-County and EFS and SLC was "simply a settlement between a creditor and its debtor for a pre-existing debt, an event that takes place every day in the business world." The trial court cited *Jayhawk Equipment Co. v. Mentzer*, 193 Kan. 505, 509, 394 P.2d 37 (1964):

"A debtor may in good faith prefer one creditor to another and the diligent

creditor is entitled to protection if he is in good faith protecting his own claim as against others. [Citation omitted.]

"The mere fact that an insolvent debtor pays one creditor in full, and in doing so absorbs all of his assets, is not of itself evidence of an intention to hinder, delay or defraud other creditors."

The evidence indicated that Tri-County did not enter into the agreement with SLC and EFS until negotiations with John Deere had broken down and John Deere had settled with KBS and the banks. In October 1985, at a bankruptcy hearing, John Deere's attorney announced that John Deere had been in "intensive settlement negotiations" with Tri-County and Mohr and that, as soon as the settlement was completed, John Deere would withdraw as a petitioning creditor. The attorney's testimony at trial indicated that John Deere came close to settling with Tri-County, Mohr, and the banks for a sum of $325,000. This settlement was never achieved, but John Deere ultimately settled with KBS and the two banks on March 7, 1986, for the sum of $340,000. The proposed settlement between John Deere and Tri-County, Mohr, and the banks did not include EFS, SLC, or any other creditors of Tri-County.

There is no indication in the record that the agreement was made secretly or hurriedly, or that Tri-County retained control of any of the proceeds after the agreement. KBS points to the fact that the agreement was made three years after Tri-County had gone out of business. Part of the proceeds of the settlement with FNB, however, had been tied up for the entire time by EFS's garnishment action and by the involuntary bankruptcy action against Tri-County. The appeal on the judgment against Stanley Bank was pending in this court.

The proceeds from the settlement with FNB had been in escrow for over fifteen months, and the litigation between Tri-County and Stanley Bank had been pending for almost three years. Both John Deere and KBS were aware of these facts.

"Under the established law of this state a debtor has a right to prefer creditors, and in doing so may pay or secure one of his creditors so long as such performance is in payment of a bona fide preexisting indebtedness." *Schmitz v. Stockman,* 151 Kan. 891, 893, 101 P.2d 962 (1940).

EFS was a judgment creditor of Tri-County. Mohr testified that he had signed notes due to SLC on behalf of Tri-County and that he felt that the settlement with SLC was reasonable when consideration was given to the SLC claims against Tri-County.

The trial court's determination that the agreement between Tri-County and EFS and SLC was not contrary to normal business procedures was supported by substantial evidence and was not clearly erroneous.

## 5c. The Agreement Between Tri-County's Attorney and John Deere's Attorney

The trial court said:

"Plaintiffs rely on the alleged agreement between Dibble [John Deere's attorney] and Willis [Tri-County's attorney] as the key to its fraud claim. This agreement, assuming arguendo that there was one, was illusory at best. As such, it is unenforceable. It is illusory because essential terms were missing. It was not a present agreement, but instead an agreement to agree in the future. Further, if we attempt to piece together the alleged agreement which was to have arisen out of written memoranda among Willis and Dibble, the picture is not complete. Dibble believed the agreement was that Willis would not dispense of any settlement money without contacting him first. Willis, on the other hand, believed only that he should contact Dibble before he entered into any type of settlement. Indeed, Willis fulfilled that obligation by his phone call to Dibble's office. It is apparent that the agreement was not enforceable as it lacked a meeting of the minds, mutuality of obligation and no consideration was paid."

The existence or nonexistence of an agreement is a question of fact. *Steele v. Harrison*, 220 Kan. 422, 429, 552 P.2d 957 (1976). The correspondence between Dibble and Willis was admitted into evidence at the trial. The letters of April 1, 1985, and April 8, 1985, were focused upon at trial. In addition, Dibble testified at length.

"In order for parties to form a binding contract, there must be a meeting of the minds as to all the essential terms thereof. [Citations omitted.] Generally, an agreement to make a contract in the future is not binding unless all the essential terms and conditions are agreed upon and nothing essential to complete it is left to future negotiations." *Phillips & Easton Supply Co., Inc. v. Eleanor International, Inc.*, 212 Kan. 730, 734, 512 P.2d 379 (1973).

A review of the correspondence between John Deere's attorneys and Willis indicates that there was never a meeting of the minds, but that they would continue to negotiate, pending a settlement with FNB.

On July 5, 1985, three days before the Tri-County/FNB lawsuit was scheduled for trial, Deere's attorneys wrote to Willis setting out Deere's settlement demand for its claims against FNB. The letter stated that if Tri-County did not accept the proposal by 9:30 a.m. July 8, 1985, the hour Tri-County's trial against FNB

was to commence, the offer "will automatically terminate and be revoked." If the Deere proposal was not accepted prior to 9:30 a.m. July 8, Deere reserved the right to pursue "any and all claims which it may have, now or hereafter," against FNB.

The question of whether a binding contract was entered into depends on the intention of the parties and is a question of fact for the trial judge to resolve. 212 Kan. at 736-37. In a letter of January 23, 1985, from Dibble to Willis, Dibble stated, "I want some assurance that when and if Tri-County receives the proceeds of any settlement it will not unilaterally dispose of them without first coming to some agreement with John Deere Company. I do not suggest we have to reach such an agreement now." Willis' response of April 1, 1985, merely indicated that he would contact Dibble prior to executing any settlement agreement with FNB. Dibble's testimony indicated that the parties specifically did not want to enter into a formal agreement at that time.

Only reasonable certainty is required in a purported contract, but where the purported contract is so vague and indefinite that the intentions of the parties cannot be ascertained, it is unenforceable. *Richards Aircraft Sales, Inc. v. Vaughn,* 203 Kan. 967, 971, 457 P.2d 691 (1969).

The evidence supported the trial court's conclusion that there was no meeting of the minds and essential terms were missing to form a binding agreement. Although Dibble testified that Willis orally promised not to unilaterally dispose of any proceeds of a settlement with FNB, Dibble's letter of April 8, 1985, stating that Willis' April 1 letter contained the assurances he wanted, contradicted that testimony. The only promise that Willis made to Dibble was that he would contact him prior to settling with FNB. There is no dispute that Willis attempted to contact both Dibble and his partner on the day of the settlement with FNB.

KBS argues that Dibble detrimentally relied on Willis' assurances because John Deere did not intervene in Tri-County's suit. Dibble, however, testified that he and Willis had not come to an agreement until after January 23, 1985. By that time, John Deere had already filed its suit against Tri-County and the banks in federal court. Dibble testified that, as of December 1984, John Deere had decided not to intervene and informed FNB that it would oppose an FNB motion to add John Deere as a party. The

trial court found that Dibble's reliance on Willis' assurances was unreasonable. We agree.

### 5d. Reliance-Promisory Estoppel

Judge Sheldon stated:

"The court finds not that it was unreasonable for Dibble to rely on Willis' statement per se, but it was unreasonable for him to rely in the matter in which he did. Willis, as an attorney, and as an officer of the court, had an ethical duty to deal truthfully with [Dibble]. The court finds that he fulfilled this duty. The problem is that Willis' statement in his letter to Dibble of April 1, 1985 saying '. . . I will contact you prior to executing any settlement agreement with the First National Bank of Olathe' was relied on as standing for more than the literal language would dictate. This statement means nothing more than Willis would get in touch with Dibble before executing a settlement agreement with First National."

Judge Sheldon made this finding based on KBS' assertion that the doctrine of promissory estoppel could be invoked in this case because Dibble relied on Willis' promise to his detriment. As discussed previously, most of the decisions Dibble made with regard to not intervening in the Tri-County litigation were made prior to the time he alleged that he and Willis had reached an agreement.

In order for the doctrine of promissory estoppel to be invoked as a substitute for consideration, the evidence must show: (1) The promisor reasonably expected the promisee to act in reliance on the promise, (2) the promisee acted as could reasonably be expected in relying on the promise, and (3) a refusal of the court to enforce the promise would sanction the perpetration of fraud or result in other injustice. *Berryman v. Kmoch,* 221 Kan. 304, 307, 559 P.2d 790 (1977). The trial court did not specifically address the first element, but did find that Dibble did not act as could reasonably be expected in relying on the promise and that Willis' actions did not amount to a perpetration of fraud.

Judge Sheldon found that Willis fulfilled his ethical duty to deal truthfully with Dibble and that Willis' behavior was not fraudulent. The evidence showed that the only assurance that Willis gave to Dibble was that he would contact him prior to any settlement and the evidence showed that Willis made every effort to contact both Dibble and Dibble's partner.

Even had the court determined that Willis promised not to unilaterally dispose of the proceeds of the settlement, the evidence indicated that part of the proceeds remained in escrow for

at least fifteen months pending the outcome of the involuntary bankruptcy action which was initiated by KBS.

The trial court did not err in finding that Dibble's reliance on Willis' statements was unreasonable.

### 5e. The Claims of EFS and SLC

There was sufficient evidence in the record to establish that EFS and SLC were bona fide creditors of Tri-County. EFS's judgment against Tri-County had been affirmed in *Executive Financial Services, Inc. v. Loyd,* 238 Kan. 663, 715 P.2d 376 (1986). The testimony of Mohr and numerous documents admitted into evidence established that Tri-County was indebted to SLC. Tri-County raised this issue in its brief. The issue was not specifically raised by KBS. KBS has not contended that EFS and SLC were not bona fide creditors of Tri-County: consequently, we need not address this issue.

Both cases are affirmed.