No. 71,260

WARREN BROWN GILLESPIE, *Appellee*, v. MARTIN, PRINGLE,
OLIVER, WALLACE & SWARTZ, *Appellants*.

(899 P.2d 478)

Opinion filed July 14, 1995.

*Eldon L. Boisseau*, of Turner & Boisseau, Chartered, of Wichita, argued the cause and was on the briefs for appellants.

*Glenn D. Young, Jr.*, of Young, Bogle, McCausland, Wells & Clark, P.A., of Wichita, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

MCFARLAND, J.: This is a breach of contract/breach of fiduciary duty action seeking recovery of funds the defendant law firm deducted from plaintiff's share of proceeds received from the sale of working interests in oil and gas leases and from suspended oil runs. The district court entered summary judgment in favor of the plaintiff in the amount of $39,104.89, and the defendant law firm appeals therefrom.

The action herein is a spin-off of the parent action reported in its first appearance before our court as *Gillespie v. Seymour*, 250 Kan. 123, 823 P.2d 782 (1992). A brief discussion of *Seymour* is necessary to an understanding of the action and issues before us. *Seymour*, commenced in 1987, was a massive take-no-prisoners, intra-family fight over a family trust's investments in the oil and gas business through Arrowhead Petroleum, Inc. (Arrowhead) (also a defendant in the action). In September 1990, judgment was entered in favor of the plaintiffs in *Seymour* of over $4,000,000 actual

damages and over $4,000,000 in punitive damages. The *Seymour* defendants appealed, and shortly thereafter Arrowhead filed for bankruptcy.

While *Seymour* was pending, Arrowhead continued to operate certain oil and gas leases in which Warren Brown Gillespie (one of the two *Seymour* plaintiffs) owned working interests. The opportunity to sell these working interests arose. It was agreed among all having ownership interests that this sale should be pursued. Gillespie was represented by Jerry D. Bogle of Young, Bogle, McCausland, Wells & Clark, P.A. All defendants in *Seymour*, including Arrowhead, were represented by Robert Martin of Martin, Pringle, Oliver, Wallace & Swartz (Martin-Pringle).

Martin-Pringle handled the sale of the working interests, including those belonging to Gillespie. Correspondence from those involved in the purchase went to Martin-Pringle as the proper contact for the sellers. There was no direct contact between Gillespie and Martin-Pringle relative to the sale. Communication was through Bogle, Gillespie's attorney. While the Arrowhead bankruptcy and *Seymour* appeal were pending, the sale and suspended oil run proceeds that are the subject of the present controversy were received by Martin-Pringle as the sellers' representative and placed in its trust account.

Martin-Pringle calculated the share therein that each working interest owner had in the proceeds and deducted the portion of sale fees and expenses attributable to each. There is no quarrel in this action with these deductions. Martin-Pringle advised Bogle that, in addition, it intended to deduct certain unpaid operating expenses from the proceeds. These unpaid operating expenses, in the amount of $39,104.89, had been part of the *Seymour* litigation, and the trial court therein had allowed Arrowhead's claim for that amount but only as "a credit against plaintiffs' judgment for recovery of money herein." Bogle wrote Martin-Pringle, stating that it could not properly make such a deduction as the same could be satisfied only as credit against the *Seymour* judgment against Arrowhead. Martin-Pringle proceeded with the deduction. The money went to Arrowhead, where it became an asset in Arrowhead's bankruptcy proceeding.

This action was filed against Martin-Pringle to recover the $39,104.89 so deducted. Both parties filed motions for summary judgment and extensive statements of uncontroverted facts. The district court incorporated many of these uncontroverted statements of fact into its memorandum decision. The district court then held:

### "CONCLUSIONS OF LAW

"From the foregoing uncontroverted facts, together with the statements of counsel at the hearing on this motion, both parties acknowledge that:

"1. Martin Pringle agreed to collect the proceeds from the sale and from suspended oil runs from Plaintiff's working interests.

"2. Martin Pringle was authorized to deduct sale expenses and fees, as well as unpaid operating expenses from the proceeds received.

"3. Martin Pringle was to pay the balance of the proceeds received to the plaintiff.

"From these acknowledged facts, the Court finds, as a matter of law, the relationship between the parties was that of agency. An agency 'is a contract by which one of the parties confides to the other the management of some business to be transacted in his name, or on his account, and by which the other assumes to do the business and to render an account of it.' *Barbara Oil Co. v. Kansas Gas Supply Corp.*, 250 Kan. 438 at 446, (1992). The determination of what constitutes agency and whether there is any competent evidence reasonably tending to prove its existence is a question of law. However, the weight to be given evidence and the resolution of conflicts therein are functions of the trier of fact. *Henderson v. Hassur* [225 Kan.] at 682 (citations omitted). In this case, there is no genuine issue as to the material facts and no factual dispute to be resolved. Martin Pringle agreed to assume the responsibility of collecting revenue, deducting expenses, and paying to plaintiff the amount to which he was lawfully entitled. An agency relationship is a fiduciary one. *Kline v. Orebaugh*, 214 Kan. 207, 210 (1974). In transactions affecting the subject matter of the agency, it is the duty of the agent to act in good faith and with loyalty to further advance the interests of the principal. *Henderson v. Hassur*, 225 Kan. 678, 687 (1979). As a matter of law, Martin Pringle owed a fiduciary duty (albeit a limited one) to plaintiff. That duty was to pay to plaintiff the full amount of his proceeds to which he was entitled.

"The disagreement between the parties arises over whether or not the [$39,104.89] in operating expenses (which were part of the judgment in 87 C 4691) were deductible as unpaid operating expenses. Plaintiff expressly objected to Martin Pringle's proposed deduction of the $39,104.89 as operating expenses since the Court, in 87 C 4691, specifically provided that such expenses were 'allowed as a credit against plaintiffs' judgment for recovery of money.' The central issue to be resolved in this Summary Judgment Motion is whether the $39,104.89 was properly deductible as unpaid operating expenses.

"The Court finds such amount was not properly deducted from plaintiff's funds. The trial court in 87 C 4691, in the exercise of its inherent equitable powers, determined the manner in which Arrowhead could recover its claim for unpaid operating expenses. Absent an appeal from the trial court ruling, Arrowhead was compelled to accept the Court's order as to the manner in which their claim is to be satisfied. The $39,104.89 was, by operation of law, satisfied and paid in full by way of credit because that was the specific order of the Court. The Trial Court did not grant a collectible money judgment in favor of Arrowhead, nor did it give Arrowhead any option as to the manner in which it could recover its unpaid operating expenses.

"Martin Pringle asserts that the filing of bankruptcy by Arrowhead or the pendency of the State Court appeal renders the trial court findings to be without force and effect. This Court rejects both assertions. The trial court's ruling with respect to operating expenses was not altered in any fashion by the State Court appeal. The Kansas Supreme Court does mention the operating expenses in its initial opinion at 250 Kan. 128. There, the Court sets forth the amount of Plaintiff's judgment and notes 'there were some allowances involving some billings among Gillespie's Estate . . . and Arrowhead.' This reference is consistent with the language of the original journal entry that allowed the expenses as a credit, and not as an independent money judgment.

"Similarly, nothing in the bankruptcy affected the nature or merits of Plaintiff's or Arrowhead's respective claims. The trial court judgment in 87 C 4691 was not vacated, voided or altered in any fashion except that Plaintiff was prevented from collecting its judgment. This in no way causes the 'credit' for unpaid operating expenses to become a separate money judgment which Arrowhead was empowered to collect. Likewise, the manner in which Arrowhead listed such claim on its bankruptcy schedules does not alter the nature of the trial court judgment. Arrowhead could have listed its claim as having a value of one million dollars; such a listing does not in any way create or validate the claim, nor does it effect a change to the State court judgment.

"The upshot of the foregoing discussion is that Arrowhead's claim for $39,104.89 in operating expenses was satisfied in 87 C 4691. At the conclusion of the case, Arrowhead had a legal entitlement to a credit against plaintiff's judgment but it no longer had a claim for unpaid operating expenses. Consequently, Martin Pringle had no authority to withhold the sum from Gillespie's proceeds. It is the duty of an agent to obey all reasonable instructions and directions in regard to the service he has contracted to perform and to adhere faithfully to them in all cases where they ought properly to be applied. Where the instructions are clear, precise, and imperative, they should be followed strictly and exactly, and a violation of definite instructions cannot be excused by a custom or usage in the business and makes the agent liable for loss resulting therefrom. See *Theis v. duPont, Glore Forgan, Inc.*, 212 Kan. 301, 307 (1973) (other citations omitted); 3 Am Jur 2d *Agency*, Sections 218 and 222 (1986).

"In the instant case, the directions to Martin Pringle were reasonable and clear. They were authorized to collect the proceeds, deduct allowable expenses, and disburse the balance to the various interest owners. Each interest owner was to receive the funds to which they were entitled and each proportionately shared in paying Martin Pringle's fee to handle the deal. Admittedly, Martin Pringle was in a difficult position. It had an attorney/client relationship with Arrowhead, yet it agreed, with the knowledge of all parties, to act in the additional role as agent for all the working interest holders. In its role as the party responsible for the collection, deduction, and disbursement of funds, Martin Pringle was an agent to all parties involved. It did not have the right to direct to its client, Arrowhead, any funds to which they were not entitled. Its duty was to ensure that each interest holder received the sum to which it was entitled and to properly account for the funds received.

"Martin Pringle had a duty to pay to Gillespie those funds to which he was lawfully entitled, and they did not do so. Gillespie was entitled to the additional sum of $39,104.89, and Martin Pringle, as a limited agent and fiduciary, is liable for not paying said sum to Gillespie.

"Plaintiff's summary judgment motion is sustained; Defendant's motion is overruled."

In *Knudsen v. Kansas Gas & Electric Co.*, 248 Kan. 469, 483, 807 P.2d 71 (1991), we stated the appellate scope of review of summary judgments as follows:

"An appellate court is required to read the record in the light most favorable to the party against whom summary judgment was entered. The appellate court takes the party's allegations as true, and it gives him the benefit of the doubt when his assertions conflict with those of the movant. Factual inferences tending to show triable issues are to be considered in the light most favorable to the existence of those issues. If there is a reasonable doubt as to the existence of fact, a motion for summary judgment will be denied. Moreover, pleadings and documentary evidence must be given a liberal construction in favor of the party against whom the motion is directed. *Ruebke v. Globe Communications Corp.*, 241 Kan. [595, 602, 738 P.2d 1246 (1987)].

"Summary judgment may be granted when the evidence shows no liability as a matter of law and where the central facts are not in dispute. *Hein v. Lacy*, 228 Kan. 249, 256, 616 P.2d 277 (1980). When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. K.S.A. 1990 Supp. 60-256(e). In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. An issue of fact is not genuine unless it has legal controlling force as to a controlling issue. A disputed question of fact which is immaterial to the issue does not preclude summary judgment. If the disputed fact could not affect the

judgment, it does not present a genuine issue of material fact. *Miller v. Foulston, Siefkin, Powers & Eberhardt*, 246 Kan. 450, Syl. ¶ 2, 790 P.2d 404 (1990)."

For its first issue, Martin-Pringle contends the district court erred in concluding that Martin-Pringle had breached its fiduciary duty to pay to Gillespie those funds to which he was lawfully entitled. Put another way, Martin-Pringle contends the district court erred in holding the $39,104.89 was wrongfully withheld and thus a violation of Martin-Pringle's fiduciary duty. It should be noted that, on appeal, Martin-Pringle is not challenging the district court's conclusion that the law firm acted as agent for Gillespie in the sale and owed him a fiduciary duty. Indeed, such a position would be contrary to the uncontroverted facts herein.

Rather, Martin-Pringle, in essence, contends the district court erred in considering the terms of the *Seymour* judgment in determining whether or not Martin-Pringle had breached its fiduciary duty to Gillespie. The law firm contends its fiduciary duty is limited to the terms of the instruments involved in the operation and sale of the working interests. Martin-Pringle states its position in its brief as follows:

"Pursuant to the Operating Agreement entered into between Gillespie's predecessor in interest and Arrowhead on September 16, 1985, Martin, Pringle withheld $39,104.89, the amount in controversy. . . . Paragraph five of the Operating Agreement vests Arrowhead, the operator, with authority to withhold proceeds from the sale of oil and gas production until all operating expenses are paid. This Operating Agreement directly relates to the working interests at issue in the present case. Therefore, the proceeds from the sale of oil produced were lawfully withheld in favor of Arrowhead under the terms of this Operating Agreement. . . .

"Martin, Pringle fully complied with the terms of the Transfer Orders for Koch Oil Company and the Division Orders for Texaco Oil Company. On November 16, 1990, Mann [a Martin-Pringle law firm member] wrote Bogle enclosing Transfer Orders from Koch Oil Company dated October 1, 1990. The Texaco Oil proceeds were to be handled in the same manner as the Koch oil proceeds pursuant to the letter sent by Mann to Texaco, dated November 19, 1990, of which Bogle received a copy.

"Exhibit 'A' to the Transfer Orders, which is incorporated by reference to the Transfer Order, states:

'All funds being held by the purchaser for the individuals or entities named herein shall be paid to Terry Mann, 300 Page Court, 220 W. Douglas, Wichita,

Kansas, 67202. From the funds so disbursed, Terry Mann shall deduct each owner's share of the operating expenses, and other costs, expenses and taxes incurred by or paid by Arrowhead Petroleum, Inc., relating to each owner's interest in the oil and gas properties from each owner's share of the funds of each of the oil and gas properties. She shall then disburse the remaining funds of each owner to each such owner.'

"Pursuant to the Transfer Orders, Martin, Pringle was to gather all unpaid oil runs, deduct operating expenses and other costs, expenses and taxes incurred or paid by Arrowhead, and then disburse the remaining funds to each owner. Martin, Pringle fulfilled these duties precisely as set forth in the terms of the Transfer Order. Further, these are the same terms which were set forth in the November 16, 1990, letter hand-delivered to Gillespie's counsel, Jerry Bogle. . . . These terms are further reiterated in the September 3, 1991, letter hand-delivered to Bogle. . . .

"The uncontroverted facts establish that Martin,Pringle obeyed all reasonable instructions and directions with regard to the service it agreed to perform on Gillespie's behalf. The instructions Martin, Pringle were to follow were clear and precise, and the same were followed strictly and exactly. In addition, Martin, Pringle treated Gillespie exactly like the other working interest owners Arrowhead was serving."

The difficulty with this position is that the operating expenses at issue herein were not current, unpaid ordinary operating expenses. Martin-Pringle, in its representation of Arrowhead in *Seymour*, had fully litigated Arrowhead's claim against Gillespie for payment of this amount. The district court, in *Seymour*, found that such claim was valid but allowed it only as a credit against Gillespie's judgment against Arrowhead. Martin-Pringle was fully familiar with the *Seymour* judgment and was representing the appellants in their pending appeal thereof. By the terms of the *Seymour* judgment, Arrowhead had no legal right to be reimbursed the $39,104.89 from the sale of Gillespie's working interests.

For its next issue, Martin-Pringle contends that the district court erred in holding that Arrowhead's claim for operating expenses was not altered by the *Seymour* appeal. Specifically, Martin-Pringle contends:

"By the express terms of the court's ruling in Case No. 87 C 4691 [*Seymour*], Arrowhead's claim for unpaid operating expenses was to be a credit against Gillespie's judgment for recovery of money. Thus, Arrowhead's ability to offset its claim for unpaid operating expenses was contingent upon the Kansas Supreme Court's affirmation of the lower court's monetary award in Gillespie's favor. Ac-

cordingly, the trial court was in error in concluding that Martin, Pringle breached its fiduciary duty by withholding the unpaid operating expenses on September 3, 1991, more than three months prior to the Kansas Supreme Court's ruling.

" '[A] party must be the absolute and beneficial owner of a judgment before he can have it offset a judgment against him.' *Mohr v. State Bank of Stanley*, 244 Kan. 555, 565, 770 P.2d 466 (1989), *Hermon v. Miller*, 17 Kan. 328, 332 (1876). At the time Mann disbursed the net proceeds, Gillespie was not the absolute and beneficial owner of a judgment against Arrowhead to which Arrowhead's claim for operating expenses could be offset against.

"On September 7, 1990, the trial court in Case No. 87 C 4691 ordered, 'The claim by Arrowhead Petroleum, Inc., for operating expenses in the amount of $32,404.00, plus accruals to the date of this judgment, shall be allowed as a credit against plaintiff's judgment for recovery of money herein.' . . . On September 3, 1991, Mann disbursed the net proceeds from the sale of working interests and suspended oil production to Bogle, Gillespie's attorney. At that time, Gillespie's judgment against Arrowhead for an amount in excess of $4 million was on appeal, and thus not a final judgment. The Kansas Supreme Court did not rule on the state court appeal until December 17, 1991. Its decision was subsequent to Terry Mann's disbursement of the relevant net proceeds to Gillespie.

"Therefore, on September 7, 1991, Gillespie was not the absolute and beneficial owner of the approximately $4 million judgment against Arrowhead to which a credit could be appropriately applied as directed by the trial court. As Martin, Pringle could not have reasonably given effect to the state court ruling pending its appeal, the trial court could not have reasonably concluded from the facts before it that Martin, Pringle breached its fiduciary duty to Gillespie by withholding the $39,104.89 in unpaid operating expenses."

There is no merit in this issue. No "set-off" is involved herein. In *Seymour*, Arrowhead had no judgment it could ever collect. It could only receive credit against Gillespie's judgment against it. There is no question herein of setting off one judgment against another. Arrowhead and Gillespie fully litigated Arrowhead's claim of $39,104.89 in *Seymour*. The fact that the *Seymour* case was on appeal when the proceeds in controversy herein were ready for distribution did not wipe the slate clean as far as distribution of the proceeds herein was concerned. Had Martin-Pringle, as a fiduciary holding proceeds it considered subject to conflicting claims, desired to protect itself, it could have held the disputed funds in a separate account or taken other action to hold the funds separate pending the outcome of the *Seymour* appeal. Instead, over the objection of Gillespie, Martin-Pringle deducted the mon-

ies from Gillespie's share and credited Arrowhead with the funds. As Arrowhead was in bankruptcy, the funds disappeared into the maw of the bankruptcy.

For its next issue, Martin-Pringle contends the district court erred in its analysis of the effect of the Arrowhead bankruptcy on the cause of action herein. Martin-Pringle argues that as it was counsel in the bankruptcy for Arrowhead as a debtor in possession, it had a duty to marshal Arrowhead's assets. This argument only has merit if the $39,104.89 deducted from Gillespie's share was an Arrowhead asset. The money so deducted was not an Arrowhead asset, and the district court did not err in so holding.

All other issues asserted are considered and held to be without merit although not specifically discussed herein.

The district court's memorandum opinion is sound and well reasoned. We have only one small disagreement therewith. The district court stated the $39,104.89 claim of Arrowhead had been "satisfied and paid in full by way of credit" in *Seymour*. The judgment of the court in that case was on appeal. This provision was a part of that judgment. It is something of a misnomer to state that Arrowhead's claim had been satisfied and paid in full in *Seymour* at the time Martin-Pringle made the deduction for the same amount. This does not in any way alter the correctness of the district court's determination that Martin-Pringle improperly made said deduction and is liable therefor.

We find no error or abuse of discretion in the district court's entry of summary judgment herein in favor of the plaintiff.

The judgment is affirmed.